MARY E. WILSON *v.* JOHN B. JOURDAN.

ON MOTION TO DISMISS THE CROSS APPEAL.

1. SUPREME COURT PRACTICE. *Cross appeal. Bond.*
   A cross appeal may be prosecuted without bond.

ON THE MERITS.

2. GIFTS. *Inter vivos. Causa mortis.*
   The test whether a gift be one *inter vivos* or *causa mortis* is whether the donor intended it to take effect *in presenti*, irrevocably and unconditionally, whether he should live or die ; and not whether the giver be or be not *in extremis.*

FROM the chancery court of Lee county.
HON. HENRY L. MULDROW, Chancellor.

Jourdan, appellee, was complainant, and Mrs. Wilson, appellant, was defendant in the court below. From a decree granting the complainant relief in part, Mrs. Wilson appealed to the supreme court, and Jourdan prosecuted a cross appeal, without bond. When the case reached the supreme court Mrs. Wilson, appellant, moved the dismissal of the cross appeal because appellee, the cross appellant, had not given an appeal bond. The facts are as follows:

In January, 1896, appellee, who was a resident of Texas, married a Miss Wilson, a daughter of appellant, and immedi-

ately after their marriage they went to his home in Texas. The bride remained there with her husband until May, 1897, when, on account of ill health, she returned to Mississippi and remained with her mother.   She had inherited from her father's estate and had acquired by a joint conveyance from her father and mother the lands involved in this suit, and some personal property, consisting partly of notes.   Soon after her return to Mississippi, having been advised that she had consumption, she conveyed all her lands by deed and had all the notes assigned to her mother, Mrs. Wilson, the appellant.   On the 7th day of September, Mrs. Jourdan died, and her ·husband was telegraphed for, and came to the funeral, and a few days after the burial of his wife Jourdan filed a bill in chancery seeking to set aside the conveyances and transfers by his wife to her mother, and in his bill he set up several contentions:   It is necessary, however, to refer to but one of them, the one passed upon in the opinion of the court, the claim that the deeds and transfers of the property by the wife to her mother were made in her last sickness, and in contemplation of death, and were, therefore, gifts *causa mortis* and void.

The appellant in her answer, denies all the material allegations of the bill.   The evidence shows that the deeds were made and signed by Mrs. Jourdan on June 14, 1897, while she was able to sit up in bed, and that the personal property was delivered to Mrs. Wilson.   The evidence further shows that Mrs. Jourdan expressed a desire to have the deeds recorded at once; that, after the deeds and transfers had been delivered, she said to Mrs. Wilson, " Now, mother, it is all yours."   At the final hearing of the cause the court below decided that the conveyances and transfers were made in contemplation of death, and therefore the gifts of personal property were legal and valid, but that the conveyance of land, being made in contemplation of death, were in the nature of a *donatio causa mortis*, and void, and therefore granted to complainant the relief asked as to the land, but denied relief as to the personal property.

Against the motion.

ON THE MOTION.

*Allen & Robbins*, for the motion.

Section 60, code of 1892, provides: "Except as herein otherwise provided, an appeal shall not be considered as perfect . . . unless the bond required shall have been given and approved." No appeal is, therefore, perfected unless the appeal bond is given except as therein provided. If the appeal is prosecuted without bond, the appellant should be able to show where it is provided in the statute that a bond is unnecessary. The cross appeal is in reality an independent appeal, entirely independent of the direct appeal. If the direct appeal be dismissed this does not affect the cross appeal. 2 Enc. Plead. & Prac., p. 353, note 5. The cross appeal may even go to an entirely different court from the direct appeal. *Farrar* v. *Churchill*, 135 U. S., 609; *United States* v. *Jahn*, 155, U. S., 109. Cross appeals must be prosecuted like other appeals. *Farrar* v. *Churchill*, 135 U. S., 135. Our court has decided that until bond is given, there is really no appeal. *Bowie* v. *Hogan*, 5 How. (Miss.), 13; *Snodgrass* v. *Nolan*, 71 Miss., 857; *Merrill* v. *Hunt*, 52 Miss., 774. A cross appeal merely means that the appeal is taken after another appeal by the opposite party from the same judgment. 2 Amer. Enc. of Plead. & Prac., 255 (Title: "Cross Appeal"). Where both parties appeal from the same judgment they may use one joint transcript, but each must pay his share of the costs thereof. *Judgeman* v. *Brewing Co.*, 38 Mo. App., 459 (2 Am. & Eng. Enc. of Plead. & Prac., 283, notes 3, 4, 5).

*W. D. Anderson* and *S. P. Clayton*, against the motion.

1. There is no statute requiring any bond of cross appellant.

2. Requirement of appeal bond and bail in error is purely statutory; none was required at common law.

3. Tidd's Proc., 1049; 1 Enc. Plead. & Prac., 965; *Swann* v. *Horne*, 54 Miss., 337; *Winters* v. *Claitor*, 54 Miss., 341.

4. Cross appellant not required to give bond. 2 Daniels Chan. Plea. & Prac. (5th ed.), top 1497, bottom 1425.

5. When appeal bond has been taken neither the court below nor the clerk had any power over the cause. It was in the supreme court. The court below nor the clerk could grant a cross appeal, and they had no power to fix bond or to require bond.

Argued orally by *J. Q. Robbins*, for the motion, and *W. D. Anderson*, contra.

WHITFIELD, C. J., delivered the opinion of the court on the motion.

We can see no need under our practice, for a bond on part of cross appellants. If appellant loses, he pays all the costs, or his sureties do. If he wins, there is a decree against appellee, the cross appellant, for all costs. If reversed on appeal and cross appeal, the court may apportion the costs; and if the appellant says the appellee, the cross appellant, is insolvent, and cannot pay the costs decreed against him, that would be true of any appeal where the appellee was insolvent and the appellant won. In any view, we can see no need of any bond by cross appellant, under our practice, which brings up usually, and almost always, the whole record on the direct appeal; and it is doubtless for this reason that no mention has ever been made of a bond by a cross appellant in our statutes or the rules of this court.

*Motion denied.*

ON THE MERITS.

*Allen & Robbins*, for appellant and cross appellee.

Did the chancellor err in entering the decree canceling the deed to the land? We think so, and shall discuss this phase of the question under two propositions.

1. The first is that, at the time Mrs. Jourdan made the deed to her mother, she was not *in extremis*, or in such a contemplation of death as to effect any gift she might make, real or personal. We shall content ourselves on this phase of the case with this statement: She was able, at the time, to sit up, to take buggy rides, to walk about the house. This is shown by all of the evidence. She was also hopeful that she would live, perhaps, for some years, as shown by the evidence of Dr. Hoyle, her attending physician; her brother, W. X. Wilson; her brother, E. R. Wilson, and her sister, Mrs. Watson. The authorities hold that, in order to constitute a gift a *donatio causa mortis*, even as to personal property (to which alone this doctrine applies), it must be made in contemplation of early death, speedy dissolution. In other words, death must be imminent and impending. Bouvier's Law Dict., title "*Donatio Causa Mortis;*" Smith's Personal Property, 131; 3 Minor's Inst., part 1, p. 601; *Thomas* v. *Lewis*, 37 Am. St. Rep., 848; *Brown* v. *Whaley*, 65 Am. St. Rep., 793; Rapalje & Laurance's Law Dict., title "*Donatio Mortis Causa;*" Pomeroy's Eq. Jur., sec. 1146 and following.

2. But suppose they were made in contemplation of death, and that death was imminent and impending, as all of the authorities hold that it must be in order to give them the characteristics of a *donatio causa mortis*, would that effect the deeds made? We certainly think not. The two deeds are in form conveyances *in præsenti*. The one to the land begins: "In consideration of natural love and affection which I bear to my mother, M. E. Wilson, and $5 cash in hand paid, I convey and warrant to my mother, M. E. Wilson, the following described property, to wit." Then follows the description of the land; and closes: "Witness my signature this the fourteenth day of June, 1897." It is acknowledged in common form that she signed and delivered the deed on the day and date therein mentioned, on the same date of its execution, and it is filed for record the same day. Now, this certainly is a straight conveyance—no limita-

tions and no conditions. She directed that it be filed for record. She also directed that it should be made to take effect immediately. It was recorded by her instructions, because she wanted it placed where there would be no trouble about it. There is no provision whatever in the deed and no statement of the decedent which provides that it should not take effect then, but vests the absolute title in her mother at once. As before remarked, the doctrine of *donatio causa mortis* is limited to gifts of personal property—is a gift of personal property made during the last sickness, when the donor is *in extremis*, and, where nothing in the gift shows to the contrary, the law will imply that the gift is made conditional on death. There is, in such a gift, a power of revocation during life, and if the donor recovers from that sickness, the gift will be void; but even a gift of personal property made *in extremis* may be absolute. Thornton on Gifts and Advances, sec. 39; *Henschel* v. *Maurer*, 2 Am. St. Rep., 757, and notes and authorities cited on page 759.

*W. D. Anderson* and *W. L. Clayton*, for appellee and cross appellant.

It is well settled law in this state that one of the requisites of a valid conveyance of real estate is, that some present interest must pass by the deed to the grantee, that if none passes until the death of the grantor, it is void; it is a will; and if not properly attested as required by law, it is ineffectual as a will. Our court has held that in determining whether an instrument be a deed or a will, the main question is, did the maker intend to convey an estate or interest to vest before his death, and upon the execution of the instrument? Or, on the other hand, did he intend that all the interest or estate should take effect only after his death? If the former, it is a deed; if the latter, a will; and it is immaterial whether he calls it a will or a deed; the instrument will have operation according to its legal effect. If it is in the form of a deed, yet is to have no

effect until death of the maker, it is a will. *Cunningham* v. *Davis*, 62 Miss., 366; *Wall* v. *Wall*, 30 Miss., 91; *Harrington* v. *Harrington*, 2 How. (Miss.), 701; *Sortor* v. *Sortor*, 39 Miss., 760.

Under the circumstances of the execution of the instrument in this case by which the appellant claims title to the real estate, no present interest or estate was conveyed in the lands; and none was to pass to the grantee until the death of the grantor; and therefore the instrument was testamentary in its character, and within the law of a will, but not valid as a will, because not properly attested as required by statute. It was an attempted *donatio mortis causa* of real estate, and under the law real estate is not the subject of that character of gift; and why not? Because under the law a *donatio mortis causa* does not take effect to convey any estate or interest until the death of the donor. Thornton on Gifts and Adv., sec. 370, p. 373, citing: *Merch* v. *Merch*, 24 Vt., 591; *Haughton* v. *Haughton*, 34 Hun., 212.

In 8 Am. & Eng. Ency. of Law (1st Ed.), p. 1342 and 14 Am. & Eng. Ency. of Law (2nd Ed.), p. 1063, it is stated that land is not the subject of gift *causa mortis* and in the first edition these authorities are cited: *Merch* v. *Merch*, 24 Vt., 591; *Gilmore* v. *Whitesides*, Dudley (S. C.), 13; *Wentworth* v. *Shables*, 89 Me., 167. An examination of these authorities will show that they are in point. The court's special attention is called to the case of *Merch* v. *Merch*, 24 Vt., 591.

The court below held that, as a matter of fact, Mrs. Jourdan made the conveyance in question in contemplation of approaching death; that the considerations (as held in *Meach* v. *Meach*, *supra*), was death. The death in the case abundantly shows it.

This court will not set aside the holding of the chancellor on a question of fact where it is supported by the testimony, as in this case. What is a *donatio mortis causa?* What are the requisites? It is like any other gift, in every respect like a

gift *inter vivos*, except that the moving cause must be the expectation of death. For definition and discussion of the subject, see Thornton on Gifts & Adv., secs. 23, 24, 25; 8 Am. & Eng. Enc. L. (1st ed.), 1346.

When the gift is in writing (as in this case) the fact that the grantor is moved to make the conveyance in contemplation of approaching death does not have to be, written in the face of the deed in order to make it a *donatio mortis causa*. That can always be shown by parol. The law writes it in the deed. Thornton on Gifts & Adv., sec. 37, p. 37; 8 Am. & Eng. Enc. L. (1st ed.), 1347.

In Thornton this language is used: "A *donatio mortis causa* is always a conditional gift, conditioned that the donee survive the donor, and that it is only to be effectual on the death of the donor. It is not necessary, however, that the donor should so expressly limit the gift at the time he makes it, nor in fact at any time. . . . If a gift is made in expectation of death there is an implied condition that it is to be held only in the event of death." And this language in 8 Am. & Eng. Enc. L. (1st ed.), 1347: "It is not necessary that there should be an express qualification in the transfer or delivery to make it a gift *mortis causa*. It may be inferred to be such from the attending circumstances, although the written transfer and the delivery be absolute." The decree of the chancellor was right, and ought to be affirmed, so far as the real estate is concerned.

For the appellee and cross appellant (Jourdan) decree ought to be reversed as to the personal property decreed to appellant (Mrs. Wilson) for these reasons.

A *donatio mortis causa* of the entire estate is invalid. The right to make such gifts cannot overturn the statute of wills. Thornton on Gifts and Adv., sec. 41, p. 39; *Meach* v. *Meach*, 24 Vt., 591; *Headley* v. *Kirby*, 18 Pa. St., 326.

Argued orally by *J. Q. Robbins*, for appellant, and by *W. D. Anderson*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court on the merits.

The evidence shows clearly that it was the intention of the donor that the gifts of property, both real and personal, should take effect immediately and irrevocably, and that the gifts were fully executed by a complete and unconditional delivery at the time.    Whenever this is the case, the mere fact that the donor is *in extremis*, expects to die, and does die of that illness even, does not affect the validity of the gifts, because they were, in such case, gifts *inter vivos*, and not gifts *causa mortis*.    To hold otherwise would be to declare that no one could make a deed to land when sick of his last illness, no matter how clear the intention to make a deed conveying a present interest absolutely and unconditionally.    The test, whether the gift is one *inter vivos* or one *causa mortis*, is not the mere fact that the donor is *in extremis*, and expects to die, and does die of that illness, but whether he intended the gifts to take effect *in præsenti*, irrevocably and unconditionally, whether he lives or dies. This is the correct view set out in 14 Am. & Eng. Enc. L., 1014, 1015, par. 6.    See, specially, *Carty* v. *Connolly*, 91 Cal., 15 (27 Pac. Rep., 599); *Hatcher* v. *Buford*, 60 Ark., 169 (29 S. W. Rep., 641, 27 L. R. A., 507); *Henschel* v. *Maurer*, 69 Wis., 576 (34 N. W. Rep., 926); *McCarty* v. *Kearnan*, 86 Ill., 292.    "The absence of any hope of recovery," says Judge Cassoday in the Wisconsin case, "is persuasive to show the intent that the deed should take effect *in præsenti;*" and the same observation may be made where all is conveyed, as here.    Conveying all is evidence of absence of hope of recovery, but also evidence that, because of it, the party means the gift to take effect at once, unconditionally and irrevocably.

The fallacy in the argument for appellee and cross appellant is the assumption that, wherever the facts show that the donor is *in extremis*, expects to die, and does die of that illness, then, necessarily, without more, and without regard to the real intent and actual delivery of the deed, the gift must be taken

to be one *causa mortis*, and hence, as to land, void, since, of course, land is not the subject of a gift *causa mortis*. But, as shown, this denies to a donor *in extremis* the power, under any circumstances, to make a gift of land *inter vivos* by deed.

*It follows from these views that, on the direct appeal the decree is reversed and a decree will be entered here for appellant, and that, on the cross appeal the decree is affirmed. So ordered.*