THEODORE McGOWAN et al. v. A. M. McGOWAN et al.

| 48 | 553 |
| 77 | 807 |
| 77 | 811 |
| 48 | 553 |
| 79 | 187 |

1. CHANCERY—PRACTICE—PLEADINGS—MULTIFARIOUSNESS.—Where several subjects are introduced in a bill of complaint, if, as to the subject-matter and the relief sought, all the defendants are connected, though differently, with the entire subject in dispute, the bill is not multifarious. For example, if the complainants claim under one title, they may join several defendants who claim the estate under separate and distinct purchasers of parcels of it.

2. PRACTICE.—Upon demurrer to the sufficiency of a pleading, an exhibit will not be referred to, either in aid or derogation of its allegations, except in so far as the contents of the exhibit are stated in the pleading.

3. SAME.—Where a bill charges fraud in the conduct of executors, in obtaining a decree for the sale of lands, such as the fabrication of false claims against the estate, and charges other persons with knowingly confederating with the executors in the fraud, and also with purchasing separate parcels of the land at the sale as mere agents of the executors, with a view to making them the ultimate owners of it, the executors and purchasers may all be made defendants to the same bill for relief against the false accounts and the fraudulent sales.

4. EXECUTORS AND ADMINISTRATORS—TRUSTEES.—Executors and administrators are but trustees of the interests of creditors and distributees, the former having the higher claim; and it is the especial duty of the trustee, when selling for the payment of debts, to obtain the best possible price. But the executor or administrator cannot purchase at his own sale, directly or through another, nor make any arrangement in trust or confidence with a purchaser, so as to obtain any profit or interest in the sale.

5. SAME—FRAUD.—The law discountenances all shifts, devices and means, whereby trust property is turned aside from the highest bidder at a competing sale, or whereby the trustee's duty may conflict with his own selfish interests.

APPEAL from the chancery court of Hinds county, 1st district, CABANISS, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*Johnston & Johnston*, for appellants.

All the authorities agree that no general rule can be laid down to define multifariousness, and that each particular bill must of necessity be tested by facts it sets forth. Story Eq. Pl. (ed. 1848), § 530.

By multifariousness in a bill, is meant the improper joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the uniting in one bill of several matters perfectly distinct

and independent, against one defendent, or the demand of several matters of a distinct and independent nature against several defendants. Story Eq. Pl. (ed. 1848), § 271, p. 313.

The same author states, also: "That the objection must be confined to a case where the case of each particular defendant is entirely separate and distinct in its subject-matter from that of the other defendants; for the case against one defendant may be so entire as to be incapable of being prosecuted in several suits, and yet some other defendant may be a necessary party to some portion only of the case stated, and then the objection of multifariousness could not be allowed to prevail." Story Eq. Pl. (ed. 1848), § 271 *a*, p. 315. And, in the section last above cited, says: "It is not indispensable that all the parties should have an interest in all the matters contained in the suit; it is sufficient if each party have an interest in some matters in the suit."

The case here shows that all of the defendants have an interest in the land sought to be recovered, all deriving title to their respective parcels from the same source—the pretended sale by McGowan's executors—and therefore the demurrer in the case was bad. In fact, if our bill had omitted to make all persons interested in any part of the plantation, parties defendant, a demurrer to the bill for want of proper parties might have been successfully interposed.

In a case before the lord chancellor of England, this language is used: "If the object of the suit be single, but it happens that different persons have separate interests in distinct questions which arise out of that single object, such persons must necessarily be brought before the court." 5 Madd. 138.

That is the precise state of facts now before the court. See also, Story Eq. Pl. (ed. 1848), § 286, note 2, and cases there cited.

Equity abhors a multiplicity of suits, and always endeavors, as far as possible, to litigate a whole subject in the same suit.   Story Eq. Pl. (ed. of 1848), § 531.

A bill is not multifarious which unites several matters distinct in themselves, but which, together, make the complainants' equity, and are necessary to complete relief; nor, on the ground of misjoinder of several plaintiffs, where either of them would not be entitled to proceed separately for relief without making the others defendants.   Danl. Ch. Pr. (ed. 1871), 339, note 1.

This whole question of multifariousness is elaborately treated in the same work (edition of 1871), with notes referring to a great number of cases decided in the American courts, and which are absolutely conclusive in our favor on this question.   Danl. Ch. Pr. (ed. 1871), 333–346, and notes and cases there cited.

This question of multifariousness has been expressly adjudicated in our favor by this court.   Forniquet v. Forestall, 34 Miss. 87, and the other cases there cited.

And yet the demurrer was sustained by the chancellor on the sole ground of multifariousness in the bill; and on this ground he dismissed it instead of permitting it to be amended.   This was error, even though the bill had been open to the objection.   In general, any defect in a bill may be amended as often as occasion may require.   Even after answer, a bill may be amended by the new lights afforded by the answer. Story Eq. Pl. (ed. 1848), 907, § 885.

Under the general statute of the state of Mississippi, relating to amendments, we were clearly entitled to have an order for amendment on sustaining the demurrer, and the bill ought to have been retained for amendment.   Rev. Code 1871, § 621.

This is not, in effect, a bill of review.   The main object of the bill is to secure to the heirs of Hugh McGowan the lands of which he died seized and pos-

sessed, on the ground that the whole proceedings by
which they were attempted to be taken from them
were illegal and fraudulent; that there was no ground
for the sale; that all of the executor's accounts were
fraudulent; that the will of McGowan was violated by
the order of sale; and that the inheritance of com-
plainants has been taken from them by the defendants
without consideration and without authority of law.
True it is, that the administration accounts are referred
to in the bill, and a prayer made that, if necessary, they
may be referred to a commissioner to reform; but that
does not make this a bill of review. The only object
in referring to those accounts at all was to show the
general proposition that they were founded in fraud,
and gave, therefore, no reason for a sale of the lands;
and that the pretended sale was, in fact, made in vio-
lation of the orders of the court, by selling on a credit
of twelve months, when the order was for a cash sale.

*T. J. & F. A. R. Wharton,* for appellees.

We have studied equity jurisprudence in vain, if the
decision appealed from in this case cannot be sus-
tained upon either of the grounds of demurrer to the
bill of complaint; and in support of this position we
cite the following authorities—those from Story's
Equity Pleadings being from the edition of 1844:
Story Eq. Pl., § 271, and note 1, p. 295 and notes 1 and
2, p. 296; §§ 272, 273, as to sales to different persons
in different lots; § 274, p. 300 and note 2, where bill
was to correct accounts of executors, and to vacate
sales by them; [this note quotes the language of a
decision to the contrary of the rule here referred to,
but which decision had been overruled]; § 274 *a*, top
p. 301, to same effect. Also, Gaines et ux. v. Chew
et al., 2 How. (U. S.) 619, pp. 641–644; also, Story Eq.
Pl., §§ 276, 284, 538, to the effect that "unconnected
parties" cannot be joined, except "where there is one

common interest among them all centering on the point in issue in the cause." Also secs. 277 and 278, and note 1 to sec. 278, commencing on tenth line from bottom of page 305, and continuing on pages 306 and 307; especially commencing on seventh line from top of page 307, in continuation of this note 1, in which reference is again made to the case hereinbefore referred to, cited in note 2 to sec. 274. Also, sec. 284 *a*, to show that a bill will not be treated as multifarious if two matters are joined therein, provided all the defendants have an equal interest therein, and the relief prayed for is of the same general character. As to the same point, see also Graves & White v. Hull et al., 27 Miss. 419, 422.

It follows, as a legal sequence of this rule that, if all the defendants have not an equal interest in the subject-matter of the suit, the bill must be regarded as multifarious, and consequently dismissed.

See also, Story Eq. Pl., sec. 530 (2), on page 515, to show that a demurrer will lie if a defendant has no connection with a large portion of the subject-matters of the bill. See also, Santacruz v. Santacruz, 44 Miss. 714, 720. In this connection, we submit that it is beyond our comprehension what connection the purchasers at the sales of the lands by the executions of Hugh McGowan can have with a proper adjustment of the accounts between these executors and the legatees or devisees under the will of said Hugh McGowan.

Even upon the general conclusion of Judge Story, as expressed in section 539 of his Commentaries on Equity Pleadings, that " there is no positive, inflexible rule as to what, in the sense of courts of equity, constitutes multifariousness, which is fatal to the suit on demurrer," we insist that the decree appealed from in this case must be affirmed, as, in the section here referred to, he uses this language: " These courts,"

referring to courts of equity, " have always exercised a sound discretion in determining whether the subject-matters of the suit are properly joined or not, and whether the parties, plaintiff or defendant, are also properly joined or not.     *     *     *    . All that can be done in each particular case, as it arises, is to consider whether it comes nearer to the class of decisions where the objection is held to be fatal, or to the other class where it is held not to be fatal.''

A demurrer is the proper form for objection to a bill of complaint on the ground of multifariousness, or mis-joinder of defendants.    Story Eq. Pl., §§ 271, 284, 538.

As then it follows, that the decree appealed from in this case was but the exercise of sound discretion on the part of the chancellor as to whether the original and amended bills of complaint were fatally defective, either on the ground of multifariousness, or of the misjoinder of defendants, we submit that this decree must be affirmed, as this court does not recognize a matter vesting in the sound discretion of the inferior court as a proper subject-matter for appeal.

Under this view of the facts in this case, and the authorities before cited, it appears to us strange indeed that appellant's counsel can hope to reverse the decree appealed from.. Surely, their bills of complaint fail to show any community of interest between the heirs of Hugh McGowan, deceased, and the purchasers of the lands at the sales by his executors in a re-adjustment of the accounts of such executors.    Even if there should be a re-statement of these accounts of the executors, surely these purchasers could not be regarded or treated by the courts as proper parties to an applica-tion intended for this purpose; then as such re-state-ment of said accounts constituted a large portion of the subject-matter of the bill of complaint in this case, in which these purchasers have no interest, it neces-

sarily follows that the decree dismissing these bills of complaint was correct and should be affirmed.

Then it follows, that if such heirs, legatees or devisees were entitled to maintain such separate actions, they could not maintain the joint action attempted in the bill of complaint in this case.

The fifth cause of the demurrer to the bills of complaint in this case was to this effect:

The bill of complaint shows that more than two years elapsed after the final settlement of the accounts of Hugh McGowan, deceased, had been allowed by the probate court of Hinds county before said bill of complaint was filed, and yet it fails to show or assign any sufficient reason why the alleged errors in the executors' accounts had not been corrected by bill of review.

And if, then, a period of two years elapsed from the allowance of this final account, before the bill of complaint in this case was filed, and the pleadings show that it had, the complainants were barred from having any re-statement or corrections of these accounts of the executors of said Hugh McGowan. Code of 1857, p. 431, art. 33; ib. p. 401, art. 16.

The bill of complaint seems to anticipate that this objection would be urged against the relief therein prayed for, and to avoid it by alleging " that, when the sale of said lands occurred, the youngest heir had not attained the age of majority," etc.

This allegation constitutes no defense against the position here discussed, for the reason that the bill of complaint alleges that the complainants are the only heirs, etc., of Hugh McGowan, " except the above named defendant, A. M. McGowan." Although it does not appear, from this allegation, whether such minor heir was said A. M. McGowan, one of the defendants or one of the complainants, it could not be that such minor was said A. M. McGowan, for the following reasons: It appears, from other allegations of the bill of

complaint, that he had qualified as one of the executors of Hugh McGowan, and participated in making the final account and sales of the lands complained of in the bill of complaint.

It follows, then, that such minor was one of the complainants in the bill of complaint in this cause; and, under the decision in Fearn et al. v. Shirley et al., 31 Miss. 301, p. 305, it follows, that whatever will bar an action as to any one of several plaintiffs will bar it as to all.

It is too well settled, especially by the decisions of this court and the previous appellate court of this state, that a party cannot be heard, to avail himself of an objection not raised in the inferior court, to authorize the citation of authorities on the point.   The fact, that appellants did not ask for leave to amend their bill of complaint, must be regarded by this court, not only as a waiver of such right, but as evidence that they were willing to risk a reversal by this court of the decree appealed from, upon the ground that their bill of complaint was sufficient to entitle them to all the relief therein prayed for.   This court cannot determine what would have been the action of the chancery court with respect to an application for such amendment.   Surely, if appellants do not desire to amend their bill of complaint, the chancery court could not compel them to do so.   If they had desired to amend this bill in the chancery court, they should have made a proper application for this purpose.   Perryman and wife v. Gardner et al., 42 Miss. 548, 549; Hunt v. Walker et al., 40 ib. 590, 593; Code of 1871, § 1036, p. 203.

In all such cases the chancellor must, *ex vi termini*, be invested, to some extent, with a discretion as to whether or not there can be any amendment made in the bill of complaint which would authorize or justify him in putting parties to the delay and expense of a further answer; which could only disclose such matters as might

then be judicially known to him; which could not authorize a court of chancery to grant any relief whatever in the cause, or to take jurisdiction of these subject-matters. Osborn v. Noble, 45 Miss.; Bloom, Adm'r v. Price, 44 Miss. 73, 79–81.

Even admitting, on the one hand, that these sales of the lands were, as charged in the bill of complaint, fraudulent, still this would not constitute any reason why the final account of these executors was not correct and properly allowed; and admitting, on the other hand, that these accounts were false, fraudulent, etc., as charged, still this would not constitute any reason why the purchasers at the sales of these lands had acted in fraud of the rights of the heirs, legatees or devisees, etc., of said Hugh McGowan. It follows, then, that although these purchasers had no interest in a proper adjustment of these accounts, as between these executors and the heirs, legatees or devisees of Hugh McGowan, deceased, although these heirs, legatees or devisees may have had a common or community of interest, both in these accounts and sales of lands; that still there was no such community of interest between such heirs, legatees or devisees, such executors and purchasers, as would authorize a court of equity, by one and the same decree, to adjust the several interests between all of these parties; in such case, even if there was such community of interest in these heirs, legatees or devisees, both in these accounts and sales, still the record in this cause discloses the fact that there was no such community of interest between these purchasers and such heirs, legatees or devisees in these accounts, and no community of interest between such purchasers, even as to the separate lots or parcels of land so sold by such executors. In such a state of the case, there could not have been any amendments of the bill of complaint, according to the authorities before cited by us, by which these several and distinct matters

could have been adjudicated in the same bill or by one and the same record, and consequently there was no error in the decree appealed from because it did not provide for leave to amend the bill of complaint.

As the demurrer in this case was accompanied by an answer denying all fraud, and the answer was specially limited to the allegations of the bill which charged fraud, etc., it follows that the decisions in Gray et al. v. Regan, Adm'r, 23 Miss. 304; Hamilton & Young v. Lockhart et al., 41 Miss. 460, 479, and Horsan v. Field, 41 ib. 712, cannot prejudice the rights of the appellees in this case.

As the remaining causes of demurrer—3, 4 and 5— to the bill of complaint are predicated upon facts appearing only in the exhibits to this bill of complaint, and as this court, in the recent case of W. C. Stathom et al. v. New York Life Insurance Company, 46 Miss., has decided that such matters will not be noticed on demurrer to the bill, we shall only refer to these remaining cases of demurrer, and the authorities which sustain them.

The third cause of demurrer was to this effect: The bill fails to show that said sales of lands, by the executors of Hugh McGowan, were not in accordance with the provisions of the will, which authorized these executors "to sell property of all kinds in their discretion as to time, terms and amounts, and to sell either publicly or privately."

The fourth cause of demurrer, after reciting said power of sale given by the will to the executors, alleges that the probate court of Hinds county, by a valid final decree, ratified the sale of said lands on a credit of twelve months, as so made by said executors.

The fifth cause of demurrer, after referring to the power of sale by these executors as given in the will of Hugh McGowan, and the decree of the probate court confirming such sales, is to this effect : That such sales

being made in conformity to the directions of said will were valid, even if made on a credit, and in violation of the decree of the probate court, as under said bill said court could not have had jurisdiction to divest the executors of the power to sell said lands according to their discretion under this bill.

We submit that these several positions are sustained by the following authorities: Code of 1857, art. 136, p. 458; ib. art. 55, p. 437; ib. art. 54, p. 436; Bartlett v. Sutherland et al., 24 Miss. 395; Bell et al. v. Tombigbee R. R. Co., 4 S. & M. 549, 563; King et ux. v. Talbert, 36 Miss. 367, 373–'4.

SIMRALL, J.:

The demurrer was sustained and the bill dismissed on the ground of multifariousness. In Roberts et al. v. Starke et al., 47 Miss., we examined with some care this doctrine upon the authorities. Whilst some general rules have been established by them, so few cases arise in which they clearly and fitly apply, it is necessary that each instance shall stand very much on its own circumstances. Among the rules deduced from the cases is this: where several subjects are introduced, if, as to the subject-matters and the relief, all the defendants are connected, though differently, with the entire subject in dispute, the bill is not multifarious. Roberts v. Starke, *supra,* and authorities cited. If the complainants claim under one title, they may join several defendants who claim the estate under distinct and separate purchases of parcels of it. 2 How. (U. S.) 602; 7 S. & M. 630.

If this bill is free of the objection taken to it, it is upon the one or the other of these grounds.

The will of Hugh McGowan, deceased, is made an exhibit to the bill; but, in testing the sufficiency of the bill upon demurrer, the will cannot be referred to, either to aid, or in derogation of its allegations, except

so far as its provisions are stated in the pleading. The bill makes no allusion to the power which the will gives to the executors to sell property. We have not thought it proper, in the attitude of the case on this appeal, to consider what, if any, curative effect that clause of the will might have on a defective sale made under probate decree.

The complainants charge that, in reality, there was no balance due from the estate to the executors, nor was the estate in that condition of indebtedness that justified a sale of the real estate; they further charge, in substance, that the sale made by the executors, at which the executors were also the virtual purchasers, was the part of a fraudulent scheme by which they consummated a purpose to become the owners, and acquire the title without an adequate consideration. They specify sundry false or excessive credits which had been allowed to the executors in their settlements in the probate court; they enumerate the several persons who were purchasers of parcels of the land at executors' sale, but who were the mere agents employed to buy in the lands from themselves.

The especial relief sought by the bill is a cancellation of the sale made by the executors virtually to themselves, as part of the *covinous* means used by them to create a necessity for sale, and, thereby afford them an opportunity to buy, was the fabrication of false and exaggerated claims against the estate in their own behalf or in favor of others.

It is argued that the multifariousness consists in blending a case which looks to a purgation of the accounts settled in the probate court, as to which the executors or their legal representative are only necessary parties, with a case for vacation and annulment of the sale in which the executors became personally interested in the purchase, but in which other parties who bought parcels of the land at the sale are also

interested. If these third parties, who bid in parcels of the land, bid for the executors, upon the agreement that the executors were to be the recipients of the title and ultimate owners of the property, they occupy no better position than the executors for whose benefit the confederation was formed. The complainants all have a common interest and title as against all the defendants who have claim to the land, although some others became, by later purchases, inter-ested in part of it. All the defendants trace their title back to a common source—the executors' sale and conveyance. If that title was faulty, and failed to pass, then it remains with the complainants, who may assert it against all of them.

All the defendants are incidentally interested in the question, whether the executors set up in the probate courts simulated claims of liability against the estate; for the allegation is, that this was conceived in fraud, so as to impose upon the court the apparent necessity to decree the sale. If the sale was invalid because of some defect in the judicial proceedings, or for non-con-formity to the decree, then the title of all who claim, by tracing their right back to the judicial decree and the sale under it, fails. If, however, that was a valid decree, and the sale was a good execution of it, except for some secret fraud and *covin* unknown to purchasers and not participated in by them, then their title could not be disturbed by the complainants.

The sale is alleged in the bill to be invalid for two reasons; first, for the fraud in which the defendants participated; second, because the decree directed the sale to be made for cash, whereas it was made on a credit of twelve months, and was so reported to the court. Manifestly, a sale made in palpable violation of the decree was made without authority. The executors were acting in execution of a power or license conferred by the decree. They had no discretion, and could not

dispense with the terms prescribed by the court and substitute conditions of their own.

If the bill had the two-fold aspect and purpose ascribed to it by the appellee, to wit: to review and correct the decree of the probate court on the final settlement, and to set aside and vacate the sale for fraud, and for not being made in conformity with the decree, then there would be great force in the objection that it was multifarious. The bill of review may be and has been barred by the expiration of two years since the date of the decree, and, moreover, some of the defendants would have no interest to litigate that subject. If there were no bar attached, the sale might be impregnable, and yet the accounts might be re-stated after being purged.

We do not understand that the complainants seek a technical review of the final and annual settlements. The allegations of improper and exaggerated credits allowed are charged as acts of fraud, by which they could plausibly seek a sale of the land, and by reason whereof they could absorb it, without parting with money. Certainly, the chancery court could not now entertain a bill of review. We think that this bill may be vindicated on the principles decided in Nevitt v. Gillespie, 1 How. 110; Butler et al. v. Spann, 27 Miss. 233; Forniquet v. Forstall, 34 ib. 96. The latter case was in many of its circumstances similar to this.

If the executors had made the sale under the power conferred by the will (which is very broad), or if that power could be referred to and applied to the sale, so as to cure the infirmity which arises from non-compliance with the decree, it would still be obnoxious to the imputations of fraud made in the bill, by means whereof the executors invested themselves individually with the title.

The executor or administrator is but a trustee acting for the interests of creditors and distributees. The

creditors have the first and highest claim upon property. In selling for the payment of debts, it is the especial duty of the executor or administrator to protect the creditors by using effects to get the best possible price. They cannot buy at their own sales, directly or through another; nor can they enter into an arrangement, or put another under a trust and confidence to purchase so that they may derive a benefit or interest or profit. Parson v. Moreland, 7 S. & M. 609. The law discountenances all shifts, devices and means by which property may be turned aside from the highest bidder at a competing sale; nor, if the trustee or executor sells pursuant to a power, can he bring others into his confidence, by reason whereof a private sale is made to them on the secret understanding that he is to take an interest or benefit. That places him in the predicament where his duty conflicts with his self interest, so that those to whom he ows fidelity and good faith may become the losers.

We think the complaintants are entitled to have their bill answered.

Decree reversed, judgment here overruling demurrer, and cause remanded with leave to defendants to answer in forty days.