MEYER *et al. v.* MEYER *et al.*

[64 South. 420.]

1. ESTATES OF DECEDENTS. *Executors and administrators. Sales of land. Purchase by executor. Trust. Partnership. Power of partner to convey land. Settlement of accounts. Vouchers. Gifts inter vivos. Effect. Checks. Stoppage of payments. Wills. Construction. Property devised. Persons entitled to object. Final accounts. Estoppel. Liability of executors. Settlement. Code 1906, section 2085.*

   Executors cannot purchase from themselves, either directly or indirectly, land belonging to the estate then being administered by them and therefore they must be *held* to hold the title to the property in trust for the persons interested in the estate.

2. PARTNERSHIP. *Power of partners to convey land. Code 1906, section 2085.*

   Where a surviving partner did not administer the partnership property under the provisions of section 2085, Code 1906, but the partnership was continued in force and its affairs managed solely under the provisions of a will by the deceased partner, the fact that the surviving partner joined in a conveyance, made by the executors of the deceased partner, with the fraudulent purpose of acquiring the lands sold for themselves, did not pass the title.

3. EXECUTORS AND ADMINISTRATORS. *Purchase.*

   Where the executors of an estate purchase land with money belonging to the estate, they hold the land in trust for the estate if the persons interested therein so elect.

4. EXECUTORS AND ADMINISTRATORS. *Settlement of accounts.*

   Where the executors of an estate fraudulently sold the lands of the estate to a third party who reconveyed it to them, it was not necessary for the court to decree a cancellation of such deeds, it was only necessary to decree the land to be held in trust and order its sale or partition.

5. EXECUTORS AND ADMINISTRATORS. *Settlement of accounts. Vouchers.*

   No vouchers for the payment of money are necessary in the settlement of executor's accounts where they admit that the money has been paid to themselves.

6. GIFTS. *Gifts inter vivos. Effect.*

Where it was the custom of the members of a partnership firm at the end of each year to make an estimate of the profits of the business and to direct the bookkeeper to credit their sons with an equal part of each partner's share of the profits, but neither partner could withdraw the profits from the business without the consent of the other, this did not constitute a valid gift *inter vivos,* as such a gift must be made complete by actual delivery and in such case there was no actual delivery of the profits; and each partner was entitled to change his mind and revoke the order to the bookkeeper at any time.

7. SAME.

In order to constitute a gift *inter vivos* there must be a parting by the donor with all present and future legal power and dominion over the property.

8. WILLS. *Construction. Property devised.*

A recital in a will of a previous conveyance of property to a designated person is not effective as a devise, and the title of such person to the property depends upon the validity of the conveyance.

9. EXECUTORS AND ADMINISTRATORS. *Accounts. Persons entitled to object. Estoppel.*

Where a testator before his death had credited his sons with a percentage of the profits of his business and dying left a will appointing his sons as his executors, the widow of one of the sons, who dies before final settlement of the estate, is estopped to object to the act of the executors in allowing themselves for profits with which they were credited before the testator's death, but which were not given to them by a valid gift, where she received the share her deceased husband would have otherwise received, but such estoppel does not extend to her minor children who received nothing.

10. EXECUTORS AND ADMINISTRATORS. *Final account.*

Where a portion of the distributees of an estate except to the final account of an executor of the estate, they cannot complain that the executor has not filed vouchers showing payments to the other distributees who do not except.

11. WILLS. *Construction. Devises.*

Where a testator bequeathed his residence to his wife and provided that his business should be continued during her lifetime, and that upon her death all his real estate and personal property should be divided among ten named persons; the widow was

not entitled to share in the final distribution, but the estate should be distributed to the ten persons named in the will.

12. ESTOPPEL. *Equitable estoppel.*
The distributees of an estate are not estopped from asserting on final distribution that the testator's wife was entitled to only a life estate, because in bills for partition of a part of the estate it was alleged that she was entitled to a part of the estate absolutely, it appearing that they were mistaken in the construction of the will.

13. EXECUTORS AND ADMINISTRATORS. *Liability of executors.*
Where the representatives of an estate, without authority, invest the funds of the estate in trade, persons beneficially interested in the estate may either hold the representative liable for the amount with compound interest or at their election take all the profits that the representative has made by such unauthorized use of funds of the estate.

14. SAME.
Where executors deposited the money of the estate in a bank with the understanding, express or implied, that the bank should lend them money individually without interest, they should be held to account for the profits made by the use of this money.

15. LIABILITY OF EXECUTORS. *Settlement.*
Where the executors of an estate used the money of the estate for their private purposes, the fact that they offered a settlement to the exceptors to their final account which was refused, is no defense.

APPEAL from the chancery court of Lauderdale county. HON. SAM WHITMAN, JR., Chancellor.

Exceptions to the account of Joe and Sam Meyer as executors of the estate of Jacob Meyer, deceased, by Mrs. Sarah Meyer and others. From a decree overruling the exceptions and dismissing the bill, the exceptors appeal.

The facts are fully stated in the opinion of the court.

*S. A. Witherspoon, Jr.,* attorney for appellants.

*G. Q. Hall, Hall & Jacobson* and *McBeath & Miller,* attorneys for appellee.

The record in this case has been lost.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree overruling certain exceptions to annual and final accounts of Joe and Sam Meyer, executors under the will of Jacob Meyer, deceased, and dismissing an original bill filed by the exceptors against Joe and Sam Meyer, executors, and A. H. George, involving the same matters contained in some of the exceptions and which was consolidated therewith and tried as one cause.

Jacob Meyer died in 1900 leaving a considerable estate, consisting principally of his interest in the mercantile firm of Winner & Meyer. By his will he: (1) Appointed his three sons, Joe, Sam, and Mattimore Meyer, his executors; (2) devised his residence to his wife, Mrs. Sophia Meyer; (3) provided that the business of Winner & Meyer be continued during the lifetime of his wife, Mrs. Sophia Meyer, and that his interest therein be managed and conducted by his executors, they to receive such compensation for their services. therefor as might be agreed upon by them and M. Winner, the surviving partner; (4) in the language of the will, "that one-half of the profits arising out of my interest of the firm Winner & Meyer, including both real and personal property, be paid or credited equally to my three sons, Joseph Meyer, Mattimore Meyer, and Samuel Meyer, as heretofore, the other half of the profits to be credited to my estate;" (5) that upon the death of his wife, all his real and personal property then undivided be equally divided among the following persons, Joseph Greenwald, Mrs. Sidonia Baum, Mrs. Amuella Cohen, Sam Greenwald, Joseph Meyer, Mattimore Meyer, Samuel Meyer, Miss Hettie Meyer, Miss Jeanette Meyer, and Miss Lillie Meyer; (6) that in the event his executors and partner, M. Winner, should deem it to the best interest of the firm of Winner & Meyer to sell any of the real estate owned by the firm, then for the purpose of making those transfers the title to all of his interest in the real estate

owned by the firm of Winner & Meyer is vested in the executors, who shall credit the proceeds of his estate or reinvest in other real estate for the benefit of the persons hereinabove mentioned; (7) that in case of dissolution of the firm of Winner & Meyer before the death of his wife, Mrs. Sophia Meyer, that his executors wind up his estate as soon as possible, within two years if they can do so, if not, as soon as they can do so without material injury to the interest of his estate; (8) that all of his estate outside of the interest in the firm of Winner & Meyer be equally divided among the same ten persons hereinabove mentioned.

Mattimore Meyer married Sarah, a daughter of M. Winner, and died on June 17, 1903, leaving surviving him his widow and several minor children, to whom he devised and bequeathed all of his property, both real and personal; this widow and children being the exceptors and complainants herein.

The firm of Winner & Meyer continued in existence until January, 1904, when it was dissolved by mutual consent. In the division of the property belonging to this firm, M. Winner was given, among other of its assets, its stock of dry goods and certain real estate, and Joseph and Sam Meyer, executors, were given, among other of its assets, the stock of groceries and certain real estate, with which they opened up and have continued to conduct a grocery business in the name of Meyer Bros. This business was conducted in one or more of the buildings turned over to them in the distribution of the property formerly owned by Winner & Meyer, and embraced in the deeds to and from A. H. George hereinafter mentioned. They have also used in this business money and other property of the estate of Jacob Meyer coming into their hands as the executors thereof. It seems that Winner and these executors were unable to agree upon a complete division of the property of the firm, and that a bill for a dissolution and winding up of the partnership

was filed by M. Winner, his daughter, Mrs. Sarah Meyer, and her children; the real property here in controversy being therein listed as the property of the firm, which litigation was ended by an agreed decree being entered. While this litigation was pending, a deed was executed by M. Winner and these executors to A. H. George to the real property in controversy and which was then being used by the executors in the business of Meyer Bros. and by this agreed decree the title of A. H. George thereto was confirmed. Immediately upon the execution to him of this deed, A. H. George reconveyed the property to Joe and Sam Meyer in their own right; the recited consideration in each deed being thirty-nine thousand dollars. Nothing, in fact, was paid for either of these conveyances; the executors simply charging themselves, several years thereafter, with the sum of thirty-nine thousand dollars received from the sale of real estate. The deeds to and from A. H. George were simply devices to enable the executors to obtain the legal title to the property. Mrs. Sophia Meyer, widow of Jacob Meyer, died some time after the dissolution of the firm of Winner & Meyer.

Numerous exceptions were filed to the final account of these executors, but we will consider those only which are here pressed, to wit, first, third, fifth, sixth, thirteenth, and fourteenth. In considering these exceptions we will omit from consideration the fact that three of these exceptors are minors, since the result reached by us would be the same if they were adults.

First exception: By this exception and their bill in equity the exceptors challenged the purchase by the executors of the real estate of Jacob Meyer, deceased, and prayed, in the language of appellant's brief, that "the charge of thirty-nine thousand dollars against the executors in their supplemental final account be held to be entirely incorrect, and that the two deeds, one from the executors and M. Winner to A. H. George, and the other

from A. H. George to Joe and Sam Meyer as individuals, be declared fraudulent and void and he canceled and held for naught, and that the real estate be ordered to be sold by the court at public sale, and the proceeds divided among the devisees of the estate of Jacob Meyer, and that Joe and Sam Meyer be decreed to pay rent for the use of said real estate to the estate they are administering from March 3, 1904, up to the present time.''

It is not necessary for us to decide whether M. Winner and these executors had the right under the will to make a *bona fide* sale of this property to a third person for the reason that the sale to George was not such. It is clear that this land had been set apart at the dissolution of the firm of Winner & Meyer to the estate of Jacob Meyer, and these executors, being desirous of acquiring it for themselves, admittedly used George as a mere channel for conveying the title from them as executors to them as individuals, to do indirectly that which they could not do directly, to wit, purchase from themselves land belonging to the estate then being administered by them, and therefore they must be held to hold the title to the property in trust for the persons interested in the estate. *McGowan* v. *McGowan,* 48 Miss. 553; *Chapman* v. *Sims,* 53 Miss. 154; *Buckingham* v. *Wesson,* 54 Miss. 526; *Woolbridge* v. *Campbell,* 61 Miss. 634.

Whether or not thirty-nine thousand dollars was a fair valuation for the land, as well as the presence or absence of a fraudulent intent on the part of the executors in purchasing the land, is wholly immaterial.

It is contended, however, by the executors that M. Winner, as surviving partner of the firm of Winner & Meyer, had full power to convey the land, or at least an equitable title thereto, to George, and that therefore the sale to him should be held to be valid. A sufficient answer to this contention is that Winner did not administer the partnership property under the provisions of section 2085, etc., of the Code, but the partnership was continued in force

and its affairs managed solely under the provisions of
the will.

Another of their contentions is that the sale to George
was confirmed by the decree entered in the partnership
dissolution proceedings, and therefore that all inquiry in-
to the matters here under investigation has been there-
by closed. It may be conceded for the sake of argument
that the validity of the deed to George is *res adjudicata,*
and still the result must be the same. At most, all that
could be claimed for the executors in this connection is
that they sold the land to George and repurchased it with
money belonging to the estate; they therefore, even un-
der that construction of their acts, hold the land in trust
for the estate, if the persons interested therein so elect.
*Buckingham* v. *Wesson,* 54 Miss. 526; *Cooper* v. *Cooper,*
61 Miss. 676.

It follows from the foregoing views that this exception
should not have been overruled, nor the bill dismissed.
It will not be necessary, however, for the deeds to be
canceled. It will simply be necessary for the court to de-
cree the land to be held in trust and order its sale or
partition. *Chapman* v. *Sims,* 53 Miss. 154.

Third exception: This exception is as follows: "These
executors charge and state that the credits taken by the
said executors in the recapitulation of the first annual
account on account of eighty-two thousand two hundred
dollars and forty-two cents paid out to themselves as fol-
lows, to wit, Joe Meyer, as shown by books Winner &
Meyer, forty-seven thousand, four hundred and sixty-two
dollars and sixty-six cents, and Sam Meyer, as shown by
books Winner & Meyer, thirty-four thousand, seven hun-
dred and thirty-seven dollars and seventy-six cents,
should be disallowed for the following reasons, to wit:
(1) Because there is no voucher filed with said account,
nor is there any evidence of the justice of said claims
of the executors, nor is any reason given why said execu-
tors should pay themselves said sums. (2) Said account

as to said items is vague and uncertain as to what the books of Winner & Meyer show in reference to said sums, whether said sums had been paid out or were due to executors or what. (3) Because said claims of the executors were never probated and registered nor passed by the court, and therefore said executors are forbidden by section 2109 of the Code to retain any part of the assets of said estate in payment of such claim against the deceased. (4) Because the failure of the executors to probate and register said claim has deprived these executors of the right to contest the same. (5) Because in truth and in fact these exceptors were due the executors no such amounts of money as they have paid themselves.''

These items of account here excepted to being charges of money paid by the executors to themselves, it is not necessary for them to be supported by vouchers; that is, by receipts from the parties to whom paid. The admissions of the receipt of this money by the credit taken for it in the account serves every purpose of formal receipts and removes any necessity therefor.

These items represent certain profits alleged to have been made by the firm of Winner & Meyer, both before and after Meyer's death, and the executors' claim to an allowance therefor arises from two sources. Their claim to an allowance of that portion made by the firm prior to their father's death is based upon an alleged gift thereof made by him to them during his lifetime; and their claim to that portion made by the firm after their father's death is based upon the legacy to them thereof contained in their father's will. Each of these claims, being governed by different rules, will be considered separately.

The claim to that portion of these profits made by the firm during the lifetime of Jacob Meyer is predicated upon the following state of facts: It was the custom of the members of this firm, during the lifetime of Jacob

Meyer, to, at the close of each year, estimate the profit made by them during the year, one-half of which belonged to each. It was also the custom of Jacob Meyer, each year after this estimate was made, to have one-half of his one-half of these profits credited on the books of Winner & Meyer to his three sons, Joseph, Samuel and Mattimore, one-third to each. This custom was also pursued by Winner with reference to his sons and daughters.

These sons of Jacob Meyer were each employees of the firm receiving salaries as such, and this credit to them of a portion of their father's interest in the profits of the business was not as compensation for any services rendered. These sons seem to have drawn each year out of the business something more than the salaries paid them, though the amounts drawn in excess of their salaries constituted only a small portion of the profits credited to them. It does not appear that they were authorized to withdraw the profits credited to them without the consent of the members of the firm, nor does it appear that either member of the firm had authority to withdraw profits therefrom without the consent of the other. It is hardly conceivable that the members of this firm intended that their sons and daughters should withdraw therefrom the profits credited to them, for it is perfectly obvious. that had they so done the business would have been seriously crippled; and, moreover, the amounts credited to them were merely estimated and not ascertained profits.

These facts evidenced nothing more than a promise on the part of Meyer to give to his sons a portion of his interest in the profits of the business, which promise he never complied with by withdrawing these profits from the business and delivering them to his sons; consequently they never became the owners thereof and their claim thereto should not have been allowed. "To constitute a valid gift *inter vivos,* the purpose of the donor

to make the gift must be clearly and satisfactorily established, and the gift must be complete by actual, constructive, or symbolical delivery without power of revocation." 20 Cyc. 1193. "A mere promise or declaration of intention to give, however clear and positive, is not enough to constitute a valid gift *inter vivos*. The intention must be consummated, and carried into effect, by those acts which the law requires to divest the donor and invest the donee with the right of property. Complete and unconditional delivery is essential to the perfection of such a gift for when the donor retains dominion over the property, or where a *locus poenitentiae* remains in him, there can be no legal title and perfect donation, and this rule has been held particularly applicable to parol gifts, and is founded upon grounds of public policy and convenience, to prevent mistake, imposition, and perjury. Delivery to be effectual must be according to the nature and character of the thing given, and hence may be actual or constructive according to the circumstances. There must, however, be a parting by the donor with all present and future legal power and dominion over the property." 20 Cyc. 1195; *Thompson* v. *Thompson*, 2 How. 737; *Wheatley* v. *Abbott*, 32 Miss. 343; *Conner* v. *Hull*, 36 Miss. 424; *Young* v. *Power*, 41 Miss. 197; *Carradine* v. *Collins*, 7 Smedes & M. 428.

If A. promises B. to give him a portion of the profits of his business, without more, B. never becomes the owner of these profits, and A. never becomes liable to account to him therefor, and the fact that A. may have credited B. therewith on the books kept by him in his business constitutes, at most, nothing more than a written evidence of the promise; and a written promise or declaration of an intention to give is no more valid or binding then a verbal one. It is simply easier to prove.

If B. is in possession of property belonging to A., A. may direct him to give it to C., and, when delivered to C. by B., C's title thereto becomes perfect; but, until so

delivered, C. has no title at all; the ownership remains in A., and he may revoke B.'s authority to deliver it to C.

If Meyer, instead of crediting his sons with a portion of his profits earned by this business, had given to each one of them a check on the firm therefor, he would have had the right to stop the payment of these checks. 20 Cyc. 1205.

The direction given by Jacob Meyer to the bookkeeper of Winner & Meyer to credit his sons each with one-third of his portion of the profits earned by the business may have authorized the managing head of that firm, if such there was, to pay the amount so credited to them when called for; but this authority he had the right to revoke at any time before payment was made.

The recital "as heretofore" contained in the following clause of the will, "I further direct that one-half of the profits arising out of my interest of the firm of Winner & Meyer, including both real and personal property, be paid or credited equally to my three sons, Joseph Meyer, Mattimore Meyer, and Samuel Meyer, as heretofore, the other half of the profits to be credited to my estate," cannot be construed as a bequest of the profits credited by Jacob Meyer to his sons during his lifetime. It simply explains and makes clear the devise to them of profits to accrue after his death. It discloses, not an intention on his part to give by the will, but, at most, that he thought he had already given, and the inquiry is not what he thought he had done but what he in fact did. The rule seems to be universal that a recital in a will of a previous conveyance of property to a designated person is not effective as a devise and the title of such person to the property depends upon the validity of the conveyance. *Noble* v. *Tipton,* 219 Ill. 182, 76 N. E. 151, 3 L. R. A. (N. S.) 645.

It is contended, however, by these executors, that appellants are estopped from disputing their right to these

profits by reason of the fact that when the firm of Winner & Meyer was dissolved sufficient assets thereof were turned over to M. Winner to cover not only his interest in the firm, but the amount of profits which had been placed by Jacob Meyer to the credit of Mattimore Meyer, his son, and husband and father of these exceptors, and that when M. Winner organized his new firm he gave to Sarah Meyer, widow of Mattimore Meyer, and mother of these minor exceptors, an interest therein proportionate to the amount so due Mattimore Meyer. This fact, we think, does estop Sarah Meyer from claiming that these executors are not entitled to this allowance, for she obtained the benefit herself of the gift intended by Jacob Meyer to be made to Mattimore Meyer, and she ought not to be permitted to retain that, and at the same time object to Jacob Meyer's other sons obtaining the benefit of the gifts intended for them; but the minor appellants are in no such situation. They obtained no benefit whatever from the gift intended for their father, received no part of it, and in no event, therefore, can be said to be estopped thereby.

. Fifth exception: Mrs. Sophia Meyer, widow of Jacob Meyer, lived for some time after the dissolution of the firm of Winner & Meyer, and during her lifetime two distributions of the property in their hands were made by . these executors; the distributions being made to Mrs. Sophia Meyer and to the ten legatees and devisees mentioned in the will of Jacob Meyer, a one-eleventh interest being distributed to each, appellants receiving the interest bequeathed to Mattimore Meyer, husband of Mrs. Sarah Meyer, and father of the other appellants.

This exception challenges the allowance of the credit claimed by the executors for these distributions on two grounds: First, that no vouchers were filed in support thereof; and, second, that exceptors are entitled to a one-tenth interest instead of a one-eleventh interest in the amounts distributed.

No voucher was necessary to support the claim for an allowance for the money paid to the distributees other than these exceptors, in so far as an exception made thereto by them alone is concerned, for it is immaterial to them whether these distributees received their share or not. All they are concerned with is the receipt of their own particular shares. They admit payment to them in so far as credit therefor is claimed by the executors; consequently the necessity for a voucher in support thereof is removed. They are entitled however, to a one-tenth interest in the estate left by Jacob Meyer and should receive in the final distribution a sum sufficient to compensate them for their failure to receive such interest in prior distributions.

Mrs. Sophia Meyer was, under the will, entitled only to an allowance of two hundred dollars per month, or more if she needed it and desired it, and the executors will be entitled to an allowance for whatever sum they may have properly paid to her under this provision of the will supported by proper vouchers.

There is no merit in the executors' contention that appellants are estopped to deny that Mrs. Sophia Meyer is entitled to a one-eleventh interest in this estate by reason of the fact that they obtained the partition of several parcels of land belonging to the estate by means of bills filed in the chancery court in which it was alleged that she was entitled to, and they themselves claimed only, such an interest. They were simply mistaken as to their rights in those proceedings, and their right to a one-tenth interest in the estate is so clear in the will that the executors ought not to have been misled thereby in making the distributions here involved.

Sixth exception: This exception, as well as the bill in equity, demands of the executors an accounting for the profits made by them in their mercantile business by the use therein of assets in their hands belonging to the estate. The relief here demanded should have been

granted. "The general rule is that neither an executor nor administrator is justified in placing or leaving assets in trade, for this is a hazardous use to permit of trust moneys; and trading lies outside the scope of administrative functions. So great a breach of trust is it for the representative to engage in business with the funds of the estate that the law charges him with all the losses thereby incurred without, on the other hand, allowing him to receive the benefit of any profits that he may make; the rule being that the persons beneficially interested in the estate may either hold the representative liable for the amount with" compound "interest, or at their election take all the profits that the representative has made by such unauthorized use of funds of the estate." 18 Cyc. 241. *Gully* v. *Dunlap,* 24 Miss. 410; *Crowder* v. *Shackelford,* 35 Miss. 321; *French* v. *Davis,* 38 Miss. 167.

It seems that a part of the money coming into the hands of these executors as a part of this estate was deposited by them in a bank at Meridian, which bank thereupon loaned them without interest a smaller sum. If this loan was made expressly or impliedly conditioned upon their depositing the estate's money with the bank, they should be held to account for the profits made by the use of this money also.

It is claimed by the executors that they offered these exceptors a settlement, which was declined by them, and therefore they ought not to be held to account to them for profits made by them by the use of assets belonging to the estate. There is no merit in this contention for the refusal of exceptors to accept a settlement would not justify the executors in appropriating the assets of the estate to their own use.

Thirteenth and fourteenth exceptions: It is claimed by the exceptors that these two exceptions were dismissed and should not have been passed on by the court in its final decree. No order of dismissal was entered, how-

ever, and the only record thereof appears in a colloquy between the court and counsel, recorded by the stenographer during the taking of the evidence of one of the witnesses. Since the decree must be reversed, however, it will be reversed as to these exceptions also, and the dismissal may be entered if it is so desired on the return of the cause to the court below. The decree of the court below will be reversed in so far as it adjudicates the exceptions herein referred to, to wit, the first, third, fifth, sixth, thirteenth, and fourteenth; and the cause will be remanded for a new trial with reference thereto; but in all other respects this decree will remain in full force and effect.

*Reversed and remanded.*