# SMYTHE *et al. v.* SANDERS.[*]

(Division B. Sept. 29, 1924. Suggestion of Error Overruled Oct. 27, 1924.)

[101 So. 455. No. 24159.]

1. GIFTS. *Attempted gift of money by check not cashed during lifetime of drawer revoked by his death.*

The attempted gift of a sum of money by check in favor of the donee, and given her during the lifetime of the donor, but not cashed until after his death, is revoked by death.

2. GIFTS. *No delivery of gift by bank check, unless cashed in lifetime of donor.*

The thing attempted to be given is money evidenced by the check, and there is no delivery of it until the check is cashed in the lifetime of the donor.

3. STATUTORY PROVISIONS. *"Check."*

Under the Negotiable Instruments Law (section 2763, Hemingway's Code) a "check" is a bill of exchange drawn on a bank payable on demand.

4. STATUTORY PROVISIONS. *"Bill of exchange."*

Under section 2704, Hemingway's Code, a "bill of exchange" is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer.

5. STATUTORY PROVISIONS.

Under section 2767, Hemingway's Code, a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check.

6. WORK AND LABOR. *No implied promise of remuneration for services of niece for nursing uncle arises.*

Where the averments of a bill are to the effect that love and affection existed between an uncle and niece, and that the uncle, when sick, was brought to the house of the niece at his request, and that she nursed and cared for him during his illness because of the relation-

ship, no implied promise of remuneration for her services for nursing him arises; the presumption being, because of this relationship, that the services were rendered gratuitously.

*Headnotes 1.  Gifts, 28 C. J., section 47;  2.  Gifts, 28 C. J., section 23;  3.  Banks and Banking, 7 C. J., section 383;  4.  Bills and Notes, 8 C. J., section 4;  5.  Banks and Banking, 7 C. J., section 390;  6. Work and Labor, 40 Cyc, p. 2823.

APPEAL from chancery court of Attala county.

HON. T. P. GUYTON, Chancellor.

Suit by Mrs. Pauline Sanders against J. G. Smythe and others. From a decree overruling demurrer to complaint, defendants appeal. Reversed, demurrer sustained, and cause remanded.

*J. G. Smythe* and *May, Sanders & McLaurin,* for appellant.

It is elemental that to sustain a gift either *inter vivos* or *causa mortis* there must be a legal delivery of the thing given, and it has been universally held that the delivery of a check or a bank book which evidences the credit the donor had in the bank of deposit and discount is not such a delivery.  3 R. C. L. 927; 12 R. C. L. 945; *Sullivan* v. *Sullivan,* 7 L. R. A. (N. S.) 156; *Myer* v. *Myer,* 106 Miss. 638; *Kingsburg, et al.* v. *Gastrell's Estate,* 110 Miss. 96.

It is not charged in the amended bill that appellee was being paid for services rendered by her to her uncle, and in fact, the probated account sworn to by Mrs. Sanders and a part of the amended bill expressly states that it was a gift in recognition of her services to him and: "In recognition of her rights thereto in preference to others." The amended bill does not charge that the appellee is seeking to recover remuneration for her services. At best it only states that she rendered services to her uncle and that he attempted to make her a gift of two thousand dollars because of such services and because of relation-

ship, and to right a wrong. It does not charge that the services were worth two thousand dollars or any sum approaching two thousand dollars. In fact, it does not charge that the services had any value at all, but the bill clearly seeks to make effectual a gift clearly and distinctly pleaded as a gift because she might have been entitled to pay for her services had she probated an account for such.

It is held by this court in *Hoyle* v. *Smith,* 113 Miss. 729, that before a claim for personal services should be allowed against the estate of decedent, there must have been either an express or implied contract to pay for such services.

*J. D. Guyton,* for appellee.

If it were true that the check in litigation is a gift pure and simple—a mere gratuity—then, under the authority of *Woods* v. *Sturges,* 116 Miss. 412, this court would likely hold, in common with most of the other courts of this country and England, that appellee has no case. But, the bill as amended in this case, shows that the "gift" of this check is not a mere gratuity; and "thereby hangs a tale." Every case must stand on its own facts. The general rule in regard to gifts of checks is stated in 28 C. J., sec. 130, pages 700, 701.

It is the special circumstances in the case at bar that make this case an exception to the general rule. There was the desire on the part of Mr. Portwood to right a wrong done Mrs. Sanders when he prevented his sister and her aunt who raised her, Mrs. Winters, from leaving Mrs. Sanders her estate a few years before by means of which Mr. Portwood was materially benefited and she was materially injured. Then there was the desire on the part of Mr. Portwood to remunerate 'Mrs. Sanders for the arduous and menial services she so generously rendered him in his last days. A court of equity is not so cold that it must be utterly bound by some inelastic

general rule. It is the exceptions which prove the rule. Will this court commend Mr. Portwood for his act of repentance, this manifestation of his spirit of generosity and justice, and then say to him that your effort is in vain because is violates one of our general rules: especially when, as in this case, where the intention is clear and free from doubt, and where no specific bequest would be thereby denied or modified and no creditor would be denied his rights in whole or in part.

Notwithstanding the general rule mentioned, and the reasons given therefor, we find among the many cases on the subject of gifts, decisions that sustain checks as the subject of gifts although the checks were not cashed or accepted by the bank before death of the donor and although the bank knew of the death of the donor. One of the best considered and reasoned cases on this point is that of *Elgin* v. *Gross-Kelly* (N. M.), 150 Pac. 922, which is quoted at length in footnote in 7 C. J. 702, 703, and 704. It is here clearly shown by the authorities that where a check is given for a valuable consideration, it is then coupled with an interest, and death does not revoke it. This check can be sued on as could a note. It is further clearly shown that this provision of the negotiable instrument law is for the protection of the paying bank. In the case at bar, the check is given for a valuable consideration—services rendered—and the paying bank has waived whatever right it may have had to refuse payment when it accepted the check, and gave the drawee a deposit slip therefor. See, too, *Estate of S. S. Taylor, deceased* (Pa.), 18 L. R. A. 855; *Rolls* v. *Pearce,* L. R. 5 Ch. Div. 730, 46 L. J. Ch. 791; *Estate of J. W. Collins Finney* v. *Attorney General,* 36 Wash. 236, 78 Pac. 927, 68 L. R. A. 119; Annotated Note in 20 A. L. R. 177. In *Carter* v. *Greenway,* 238 S. W. 65, the Arkansas court sustains the delivery of a check as a good gift. In that case two checks were given, and both consumed the deposit of the maker.

Maine recognizes the general rule and is classed as adhering to the majority rule, yet, in *Whithouse* v. *Whitehouse,* 90 Me. 468, the court held the check delivered in that case to a third party for another was good though not even delivered until after death, there being a consideration to support the check—promise of marriage.

Minnesota recognizes the general rule, but in *Varley* v. *Sims,* 100 Miss. 331, a check was held good where delivered to a third party for another and being for the whole of the deposit. See, also, 1 Beach on Contracts, secs. 653 to 657, inclusive; *Matter of Todd,* 95 N. Y. Supp. 211; *Lasher* v. *McDermott,* 141 N. Y. Supp. 574; *Wallace* v. *Schaud,* 81 Md. 594, 32 A. 324; *Graham* v. *Rapp,* 105 Mo. App. 590, 80 S. W. 42; *Snyder* v. *Guthrie,* 192 Iowa, 624, reported in 24 A. L. R. 950, and note following on page 962.

SYKES, P. J., delivered the opinion of the court.

This cause presents an appeal from a decree of the chancery court overruling the demurrer of appellants to the amended bill of complaint of appellee, and is here granted to settle the principles of the cause. The material averments of the bill are:

That Thomas J. Portwood died at the residence of the complainant, who was a niece of Portwood, leaving a last will and testament under which appellants Smythe and Winters are named as executors. That complainant is one of the beneficiaries named in the will. Complainant was reared by her aunt, Mrs. Winters, who died intestate. Mrs. Winters was a sister of Portwood. That Mrs. Winters had no children, and looked upon this complainant as her child, and expected and desired to devise and bequeath her property to the complainant, but was prevented from so doing by the objection of Portwood. That Portwood for some years prior to his death was in feeble health, and lived near complainant, and was frequently

visited, waited on, and cared for by complainant. That after the death of his sister, with whom Portwood lived, he lived alone until about two weeks before his death, when he became so helpless that in order to be better cared for he moved to the home of complainant, and there remained until his death, during wihch time complainant waited on him and nursed him, being prompted in doing so by the natural love she had for him and he in return had for complainant. That none of his other relatives came about him or nursed him. That Portwood was moved to complainant's home at his request, and complainant, at the request of Portwood, nursed and cared for him, giving him at all times the best care and attention she could, and doing for him a work and service that was menial, arduous, and hazardous.

The bill then alleges: That the day before Portwood's death he requested complainant to write out for him to sign a check for two thousand dollars on the defendant bank, telling her at that time that he wanted her to have that much, as she deserved it, and it belonged to her. That he did not have long to live, and wanted her to have that much of his money then deposited in the bank. After complainant had written the check for two thousand dollars, Portwood then stated that he wanted to include in the check two dollars and sixty-five cents he owed complainant's husband, and to draw a check for two thousand two dollars and sixty-five cents, which she accordingly did, and this check was signed by Portwood. When the check was delivered to her Portwood requested her to have it cashed and place the money to her credit. That at this time Portwood's health was such that she did not feel like leaving him, and that he died the following morning before she had an opportunity to cash the check. The afternoon of his death, however, she went to the bank, presented the check, and asked them to give her a deposit slip for this amount, which the bank did. Later on the bank wrote complainant that they had not credited her

account with this amount because of the death of Portwood before the check was paid. The bill then alleges that, if this check were credited to her account, the deceased would still have left in the bank more than one thousand dollars which was more than enough to pay all the creditors of his estate. It then alleges that the check was given to complainant by Portwood freely and voluntarily and in recognition of the just rights, claims, and deserts of complainant, and was not revoked by him during his lifetime; further, that she has presented as her claim against the estate the deposit slip of the bank for this amount, but that the bank and the executors of the estate refuse to allow and pay this claim. Appropriate relief is prayed.

The demurrer, in short, states that Portwood was attempting to make a gift to complainant, which was not completed during his lifetime and revoked by his death. Complainant contends that the check was not a gratuity, but was issued for valuable consideration, namely, her services for nursing Portwood and to repair a moral wrong he had done complainant in helping persuade her aunt not to devise all of her property to complainant.

If this check were issued for valuable consideration, a very interesting question would be presented to this court as to whether or not the death of Portwood would revoke the authority of the bank to pay. A number of the authorities bearing upon this question will be found collated in the note after the case of *Estate of Richard Donahoe,* 20 A. L. R. 392, and also in the note to *Foxworthy* v. *Adams,* 27 L. R. A. (N. S.) 308.

A vast majority, if not practically all, of the courts, however, hold that the attempted gift of a sum of money by check not cashed during the lifetime of the drawer of the check is revoked by his death. The reason of this is that there must be a delivery of the money, either actual or constructive. The drawer must part with his dominion over the property. Until the check is actually

cashed he has the right to stop payment. The money given is his until the check is actually paid. This question is discussed in the cases of *Meyer* v. *Meyer,* 106 Miss. 638, 64 So. 420; *Kingsbury et al.* v. *Gastrell's Estate,* 110 Miss. 96, 69 So. 661; *Woods* v. *Sturges,* 116 Miss. 412, 77 So. 186, L. R. A. 1918C, 338.

Under the Negotiable Instruments Law (section 2763, Hemingway's Code), "a check is a bill of exchange drawn on a bank payable on demand." Section 2767, Hemingway's Code, provides "a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." Section 2704, Hemingway's Code, defines a bill of exchange as "as unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer." The subject-matter of the gift is the amount of money called for in the check. A check is merely the order to the bank, the creditor of the drawer, to deliver the money to the payee. Until payment there is consequently no delivery of the subject-matter of the gift.

We think the averments of the bill negative the idea that there was an implied contract on the part of Portwood to pay his niece for nursing him. The bill alleges facts which show a close relationship of love and affection between uncle and niece and the inference from these averments is that she nursed him because of this relationship. The case comes squarely within the rule announced in *Hoyle et al.* v. *Smith et al.,* 113 Miss. 729, 74 So. 611. Because of the relationship the presumption is that the services were intended to be gratuitous, and the bill fails to aver clear and positive facts of a contrary intention by these parties.

Even if Portwood felt that he had committed a moral wrong against complainant by persuading his sister not to make a will leaving her property to complainant, yet this is not a valuable consideration in law for the issuance of the check.

The fact that the bank issued the deposit slip in favor of complainant makes no difference, inasmuch as the money has never been withdrawn from the bank, and the *status quo* of the parties is in legal contemplation the same as if the check has not been honored and the deposit slip issued.

The two dollars and sixty-five cents owed complainant's husband and included in the check does not alter the fact that it was an attempted gift. This money was owed, not to complainant, but to her husband, and it was evidently the intention of Portwood that out of the proceeds of the check she should pay this sum to her husband.

*The decree is reversed, the demurrer sustained, and the cause remanded.*