FRANCES B. MARSHALL ET AL. v. SYDNEY V. STRATTON ET AL.

[51 South. 132.]

1. REPLEVIN. *Verdict for defendant. Evidence. Uncertain transac-
tions between dead persons.*

   A verdict for defendants in an action of replevin between kindred
   for old furniture will not be disturbed where its ownership de-
   pends upon transactions between persons now deceased of which
   the living are not well advised, and the acts of the deceased
   woman under whom plaintiffs claim can be accounted for rea-
   sonably only on the assumption that she had given the property
   to the deceased woman under whom defendants claim.

2. GIFTS INTER VIVOS. *Parol wills.*

   An agreement between two sisters that the survivor should have
   the furniture, the subject of the agreement, does not constitute
   a gift *inter vivos*, but is a futile effort to make a parol will.

FROM the circuit court of Adams county.

HON. MOYSE H. WILKINSON, Judge.

Mrs. Marshall and another, administrators *de bonis non* of
the estate of Mary Louise Williams, deceased, appellants, were
plaintiffs in the court below; Sydney V. Stratton and others, ap-
pellees, were defendants there. From a judgment in defend-
ant's favor the plaintiffs appealed to the supreme court.

The plaintiffs as administrators, sued the defendants in re-
plevin to recover designated household furniture claimed by
plaintiffs as having been the property of their testatrix. It was
shown that the furniture had belonged to Mrs. Caroline M.
Williams who died in 1863, leaving her property to her three

children Caroline M. Stratton, Irene S. Williams and Mary Louise Williams; that the furniture, by division of property among the three, was awarded to Mary Louise Williams. Shortly after the death of her mother Mary Louise Williams went to the home of her sister, Caroline M. Stratton, and carried with her the furniture and placed it in Mrs. Stratton's home. Later Mary Louise Williams visited, and remained in the home of, her other sister Irene S. Williams, but left the furniture in the home of Mrs. Stratton where it remained until after the death of Mrs. Stratton in 1908.

The defendants declined to deliver up the furniture, claiming that they were entitled to its ownership and possession as heirs of Mrs. Stratton; and they introduced evidence tending to show that some two or three months before the death of Mary Louise Williams there had been an oral agreement between her and Mrs. Stratton that the survivor of the two should own the furniture. Mary Louise Williams died in 1906, and by her will, which had been duly probated and was introduced in evidence, she named her two sisters, Mrs. Stratton and Irene Williams as executors thereof and bequeathed the furniture to Irene Williams. Mrs. Stratton declined to act. Mrs. Williams took out letters of executorship, but failed to make any inventory of the personalty of the estate or to cause any appraisement to be made. Mrs. Stratton died in October, 1908, and Mrs. Williams about one month later. The will of Mrs. Stratton, duly probated and introduced in evidence, purported to make a disposition of the furniture to two of the defendants. The opinion of the court further states the facts.

*Martin & Bowman,* for appellants.

The material question in this case is, whether there is sufficient legal evidence to establish a gift of the furniture by Miss Mary Louise Williams to Mrs. Caroline M. Stratton. If not, then the title never passed from Miss Williams, and appellants,

as her present representatives, are entitled to recover. The only direct evidence on this point is that one witness, Mrs. Wheeler, had overheard on several occasions conversations between the ladies which the witness had understood as conveying information to the following effect,—that if Miss Mary Louise Williams died first, the furniture was to go to Mrs. Stratton, and that if Mrs. Stratton died first, the furniture was to go to Miss Williams. Now, in considering this proposition, it must be borne in mind that when these two ladies were talking about the furniture they were talking about something that belonged to Miss Williams. The court will note that the witness herself recognized that the furniture had been the property of Miss Williams. Now, the substance of these conversations was introduced in evidence for the purpose of establishing the gift to Mrs. Stratton from Miss Williams, upon the theory either that they are in themselves and of their own force sufficient to create a gift, or that they constitute some evidence that such a gift had been made prior thereto. Whatever the law may be, it is manifest that the words cannot be given any force or effect other than or different from their plain meaning and intent, and that if they create a gift, or are evidence that a gift has been made, the gift so created, or evidenced, must be of the character described in the words. Ascribing to the witness absolute accuracy, both in her recollections and report of the conversation, we have evidence of the following arrangement between the ladies, namely, that this furniture, which belonged to Miss Williams, was, in case Mrs. Stratton outlived Miss Williams, to be the property of Mrs. Stratton, otherwise to remain the property of Miss Williams. It is perfectly clear from a critical examination of what Mrs. Wheeler said that she was testifying to just this sort of parol agreement or understanding between Miss Williams and her sister, Mrs. Stratton; and in placing such construction upon her testimony we are practically ignoring the very significant statement

that the conversations in which this agreement was spoken of, were of a jocular nature.    Giving them, however, their full effect and disregarding the jocular ·feature as not causing a doubt whether they really meant what they said, the question arises as to whether a valid and binding gift from Miss Williams to Mrs. Stratton was either created or ·sufficiently evidenced by them. We assert the contrary with great confidence.    We claim that from a legal standpoint, all such conversations were merely the idle chat of an hour, and that no rights were thereby vested either in Mrs. Stratton or lost to Miss Williams.    Gifts to be valid and binding between the parties must be either *inter vivos* or *causa mortis*.    In the instant case the alleged and supposed gift can not be sustained as a gift *causa mortis,* as it lacks the most essential feature of such a gift, the necessity of having been made in sickness and contemplation of death.    *Kiff v. Weaver,* 55 Am. Rep. 601; *Wilson v. Jourdan,* 79 Miss. 133; 20 Cyc. 1230.

The evidence is, without contradiction, that when these conversations occurred, Miss Mary Louise Williams was not sick, but in very good health, and that there was absolutely no feature of a gift *causa mortis*.    Nor can the alleged gift be ·sustained upon the theory that it was a gift taking effect *inter vivos,* unconditionally, immediately and irrevocably.    So far as possession is concerned the alleged donee simply remained in possession of the property that had been left with her for a long time, but the trouble with appellees' case is that the supposed gift was not unconditional, not to take effect *in præsenti,* but was conditioned absolutely upon the contingency of Mrs. Stratton's surviving Miss Williams.    This fact destroys the validity of the alleged gift.    There must be no rights reserved by the donor, there must be no strings tied to the gift, and it must furthermore be an absolute conveyance coupled with immediate possession.    *Smith v. Dorsey,* 10 Am. Rep. 118.

*Lemuel P. Conner,* for appellees.

The appellees do not claim the gift to have been made in contemplation of early death, or that it was a gift *causa mortis,* but insist that it was a gift *inter vivos.* In the case of *Wilson v. Jourdan,* 79 Miss. 133, this court announced in terse language the essential elements of a gift *inter vivos* as distinguished from a gift *causa mortis.* The test is not the mere fact that the donor is *in extremis* and expects to die and does die of that illness, but whether he intended the gift to take effect *in præsenti,* irrevocably and unconditionally. In the present case the gift was not postponed to take effect when Mary Louise Williams should die, but, on the contrary, its effect was immediate and irrevocable. What other incidents are there in a gift *inter vivos?* To quote from the language of the supreme court of Indiana in the case of *Smith, Admr., v. Dorsey,* 38 Ind. 451, 10 Am. Rep. 118: "It must take effect at once and completely, and when it is made perfect and complete by delivery and acceptance, then it becomes irrevocable by the donor." And that is the rule of law we find in practically all the jurisdictions, including our own, from *Wheatley v. Abbott,* 32 Miss. 343, on down. If in the present case there had yet remained some matter or thing to be done to complete the gift; if the donor had retained any control over the property; if there were any conditions imposed upon the donee which affected delivery or title, then the gift would have been invalid. To drop into the vernacular of the day, if there had been any strings tied to the gift, it would have been invalid. In the Indiana case cited *supra,* a man about to join the army during the Civil War, said to a friend, then having in his possession a gun belonging to the enlisting soldier, "Well, if I never return, you may keep the gun as a present from me." The court was clearly right in holding that such a statement carried no gift *inter vivos,* and that it lacked the elements of a gift *causa mortis.* The alleged donor used the words, whose meaning was that he reserved all of his rights of ownership and pos-

session. That case is totally different from the case at bar, and is·valuable to us only as giving a concise and accurate description of the requirements for a valid gift *inter vivos*. In this case the gift was immediate. Mrs. Stratton was already in the possession of the furniture and the effect of the gift was to take effect *in præsenti*. It was irrevocable and unconditional; the furniture was already in the possession of Mrs. Stratton, so that no formal delivery was necessary; the gift was absolute, unconditional and immediate, and accepted by Mrs. Stratton. What more was needed? It is highly improbable that this lady used terms that would have been employed by a lawyer, had he been called upon to draft a deed of gift to carry out their intentions. But the words used or the name given to an agreement are not the sole guide of him who seeks to know the nature of that agreement. Courts look to the intention of the parties, and seek to ascertain the *aggegalio mentium*. In this case it is immaterial whether Miss Williams had said to Mrs. Caroline Stratton as to the furniture in controversy, "I will now make you a gift of this furniture with contingent reversion to myself if I shall survive you." Such a gift would have contravened none of the rules of law governing the validity of a gift *inter vivos*.

Evidence of the possession or control of the subject of a gift, or of an assertion of right thereto by one or the other of the parties is admissible to prove or disprove the fact of a completed gift. 20 Cyc. 1222.

Proof of a fact tending to show a moral consideration for a gift is not irrelevant, especially when it is attempted to be shown by the opposite party that the declaration of the alleged donor, by which the gift is sought to be established, were made in jest. 20 Cyc. 1221, 1223.

The declarations and admissions of a donor, either before or after the alleged gift, unless too remote or inconsistent, with an intent to give, are admissible, as bearing on his intentions, for the purpose of establishing the gift. Prior or contemporaneous

declarations of the alleged donor are also admissible to show that
a certain transaction was not intended as a gift; but when the
gift is once established, his subsequent declarations are ineffect-
ual to invalidate it. *Nelson v. Iverson,* 17 Ala. 216.

'Whether or not there is sufficient evidence to be submitted to
the jury on the question of a gift *inter vivos,* it is for the court to
determine; and if the trial court has not abused the discretion
vested in it, the finding will not be disturbed.    53 Pa. St. 108,
123 Mich. 44, 6 Tex. 516, 24 Ala. 9, 124 Iowa, 401, 170 Mass.
445, 33 Vt. 639, 78 N. Y. 446.

WHITFIELD, C. J., delivered the opinion of the court.

We think the right result has been reached in this case.    It
is true that the testimony of Mrs. Wheeler to the effect that Mrs.
Stratton and Miss Louise Williams agreed that if Miss Williams
died first Mrs. Stratton should have the property, and if Mrs.
Stratton died first Miss Williams should have the property, does
not establish a gift *inter vivos.    Wilson v. Jourdan,* 79 Miss.
133, 29 South. 823.    It was in itself a futile effort to make a
parol will.    The alleged gift was not to take effect *in præsenti,*
and was not unconditional or irrevocable.    But Miss Williams,
by her will, bequeathed this parlor set of furniture (which it is
a great misfortune was not consumed in the conflagration which
destroyed Mrs. Stratton's home) to her sister, Mrs. Irene Wil-
liams.    Mrs. Stratton and Mrs. Irene Williams were the exe-
cutors of Miss Louise Williams.    Mrs. Stratton declined to act,
and Mrs. Irene Williams acted during the two years intervening
between the death of Miss Louise Williams and Mrs Stratton;
the former dying in 1906 and the latter in 1908.    The testi-
mony conclusively shows that Mrs. Irene Williams visited her
sister, Mrs. Stratton, constantly, saw this parlor set of furniture
in Mrs. Stratton's home, where it had been since 1863, every
week, and never claimed it, and never said one single word to
indicate any claim of ownership on her part of this furniture

against Mrs. Stratton. It is further shown that Mrs. Irene Williams never returned any appraisement of this parlor set of furniture, and never inventoried it. It is further shown that Mrs. Stratton left a will in which she bequeathed this furniture, referring to it as "my parlor set of furniture."

We think it is very probable—indeed, the only rational probability—that Mrs. Stratton and Mrs. Irene Williams both treated the long use of the furniture, and the conversation testified to by Mrs. Wheeler, between Mrs. Stratton and Miss Louise Williams, as having constituted a valid gift from Miss Williams to Mrs. Stratton of this furniture, and, further, also, that Mrs. Irene Williams intended, by her conduct, herself to ratify that supposed gift by acquiescing in it—in short, by giving it herself, inasmuch as she was the owner under the will of Louise Williams, and never, as stated, set up any claim, though constantly in the home of Mrs. Stratton, and necessarily seeing the furniture constantly. It seems incredible that there could have been any other understanding between Mrs. Stratton and Mrs. Irene Williams, who was clearly the owner of this property, after Miss Williams' death, than that Mrs. Irene Williams intended, by her conduct, to confer the property on her sister, Mrs. Stratton. If a contrary verdict to this view should have been rendered, it would be extremely unsatisfactory and exceedingly difficult, if not impossible, to uphold.

We are of opinion, on the whole case, certainly a most disagreeable one, that justice has been done. Wherefore the judgment is *affirmed.*