HARMON *v.* McFARLANE.*

(En Banc. March 31, 1924. Suggestion of Error Overruled April 28, 1924.)

[99 So. 566. No. 23824.]

1. GIFTS. *Must be completed by delivery.*
   To constitute a gift of notes, the intent of the donor alone is not sufficient, but there must be a delivery by a surrender of all control or dominion over the notes by the donor to consummate the gift.

2. GIFTS. *Notes held delivered by father to son.*
   Where father told president of bank, in son's presence, to give son notes in bank vaults, held by bank as security for debt of father, and the president on son's subsequent request showed the notes to and discussed notes with son, and thereafter replaced them in the vault as collateral security, there was a sufficient delivery of the notes to the son.
   SMITH, C. J., and SYKES, J., dissenting.

---

*Headnote 1. Gifts, 28 C. J., section 21; 2. Gifts, 28 C. J., section 29.

APPEAL from chancery court of Monroe county.
HON. A. J. McINTYRE, Chancellor.

Proceedings by J. C. McFarlane, Jr., executor of the estate of J. N. Harmon, deceased, against E. W. Harmon and others, to determine ownership of notes. Decree against the named defendant, and he appeals. Reversed and judgment rendered.

*Paine & Paine,* for appellant.

In this case the equities are all with the appellant. It is clear from the evidence and uncontradicted that decedent wanted the appellant to have the notes in litigation, and not only did he want appellant to have them and so expressed his intention, but he also did everything he could to have the notes delivered to appellant, to-wit: he instructed J. C. McFarlane, Jr., the custodian of the notes, to deliver them to appellant. And the next day after these instructions appellant called at the bank and McFarlane brought out the notes and showed them to him and told him all about them. But the bank did not let the notes out of its possession due alone to the fact that there was a small amount then due the bank, for which the notes were held as collateral security.

We submit that after the express instructions of the decedent to McFarlane, that the manual delivery of the notes by the bank to appellant, was not necessary to effectuate the gift. McFarlane or the bank held these notes for the appellant either as the trustee or as the agent of the appellant. No absolute rule can be laid down as to what will constitute a sufficient delivery to support a gift in all cases. All that is required under the law is that the delivery shall be as perfect as the nature of the property and circumstances and surroundings will reasonably permit. And hence it may be actual, constructive or symbolical, according to the circumstances. See 28 C. J. 632, section 22 and authorities; *Caradine* v. *Collins,* 7 S. & M. 428, 432; *Myer* v. *Myer,* 106 Miss. 630; 12 R. C. L. 936, sec-12 and authorities.

We also insist that McFarlane or the bank became the trustee of these notes for appellant. Thus the present

and future title to the notes passed to the donee and the gift was perfected. See 28 C. J. 639, section 30 and authorities, and also section 32, '(c). See, also, *Conner* v. *Hull,* 36 Miss. 424.

Where the evidence shows that the third person to whom personal property has been delivered to be given to the donee (even after the death of the donor) is a trustee holding the property for the benefit of the donee, the control and title to which have been surrendered by the donor, subject only to conditions not inconsistent with the passing of an absolute and present interest, the gift is complete and the death of the donor does not revoke it. See *Irvine Iness, Admr.,* v. *Potter,* 130 Minn. 320, 156 N. W. 604; 49 Ind. App. 345, 96 N. E. 487, 165 N. W. 463; 30 Tex. Civ. App. 629, 71 S. W. 397, 32 L. R. A. 756; *Henry Dinslage, Admr.,* v. *F. Stratton* (Neb.), 180 N. W. 81.

In the case at bar the unqualified direction by J. N. Harmon to the custodian of the notes to deliver the notes to the appellant, under the facts in this case, was sufficient delivery, as it was the only delivery of which the notes were susceptible, in view of the fact that the notes were held as collateral by the custodian. We also refer the court to *King, Admr.,* v. *Smith,* 54 L. R. A. 708.

*Leftwich & Tubb* and *D. W. Houston, Sr., and Jr.,* for appellee.

"The burden of proof is on one claiming to be the donee of property to establish all facts essential to the validity of such gift." 28 C. J. 670, 676, par. 82.

A gift to be enforceable by the donee must take effect *in praesenti.* It must be absolute and irrevocable as this court has time and again decided. *Marshall* v. *Stratton,* 96 Miss. 465; *Wood* v. *Sturgis,* 116 Miss. 412; *Meyer* v. *Meyer,* 106 Miss. 638; *Kingsbury* v. *Gastrell,* 110 Miss. 96, 28 C. J. 634; 14 Am. & Eng. Ency. Law (2 Ed.), 1024, 1056; *Wheatley* v. *Abbott,* 32 Miss. 343.

As we have stated heretofore the donor may deliver to a third person and where the third person is the agent of the donor then it is incumbent on the agent to make the

delivery. If he does not, the gift fails. *Meyer* v. *Meyer,* 106 Miss. 638, 28 C. J. 640.

In *McWillie* v. *Van Voctor,* 35 Miss. 429, the donor executed a bill of sale and delivered it, but didn't deliver the property and when the donee sued for the property he lost, showing that the delivery, the loss of dominion over the property by donor is an absolute essential. That the learned counsel call McFarlane a trustee matters nothing; he was plainly the agent and functionary of the donor, Harmon. Nothing was done to strip him of that authority, and that relation; nothing is shown here in the testimony; not a word or a syllable as we conceive it, that he was to stand for and represent the appellant. In fact, he was not only the agent of Harmon in this transaction, he was executor of the will, and in his advice to Harmon about his own needs, he seemed to have counseled him to keep his hands on these notes for his own use, which was right, of course.

The counsel for appellant seem to attempt to get rid of the rule that the findings of the learned chancellor on the facts in this case are binding on this court, by arguing that the facts are not disputed, but we submit that counsel misconstrue the rule on this subject. It is not only what was testified to by the witnesses, but it is the interpretation by the court.

Argued orally by *Thomas Fite Paine,* for appellant, and *Geo. J. Leftwich,* for appellee.

HOLDEN, J., delivered the opinion of the court.

The suit is in chancery, and involves the question of whether or not a gift of certain promissory notes by J. N. Harmon, deceased, to his son Ellie W. Harmon was completed by delivery of the notes.

The litigation arose in this way: J. N. Harmon died, and left an estate, and J. C. McFarlane, Jr., was appointed executor. Upon the petition of the wife of the

deceased the executor filed an answer and inventory of the estate, but in his answer he stated that there were several promissory notes amounting to about two thousand, six hundred dollars belonging to the estate, which were held as collateral by the Commercial Bank & Trust Company of Aberdeen to secure the payment of an indebtedness of three hundred, seventy-six dollars and twenty-five cents due by the deceased to the bank, and that Ellie W. Harmon (appellant) a son of the deceased, claimed these collateral notes as a gift from his father, and the circumstances of the gift were stated in the answer, and the court was asked to adjudicate the ownership of the notes. Mr. McFarlane was the president of the above bank and custodian of the collateral notes, as well as being the executor of the estate.

The proper parties, including the bank, the wife and children, and the son Ellie W. Harmon, were brought into court, and Ellie W. Harmon claimed the notes as a gift from his father, and the wife and children of deceased disputed the claim, and upon this issue the court heard the evidence, and decreed there was no gift of the notes to appellant, Ellie W. Harmon, by his father, J. N. Harmon, deceased, because there had been no delivery of them.

The testimony, in which there is no substantial conflict, shows the following state of facts upon which must be determined the question of whether there was a consummation of the gift by a delivery of the notes; the deceased had borrowed three hundred seventy-six dollars and twenty-five cents from the Commercial Bank & Trust Company and deposited the notes as collateral to secure the payment of the debt. It seems the notes were in the custody of Mr. J. C. McFarlane, Jr., president of the bank, and who was also personal adviser of the deceased. However, the notes were in the vaults of the bank, and held there as security for the debt due by the deceased to the bank.

Several days before Mr. Harmon died he expressed the wish that these notes be given to his son, Ellie W. Harmon, who then lived in Texas. He said to Mr. McFarlane:

"I want Ellie to have the notes; I am going to give them to him. The old woman is trying to beat me out of my property. Ellie is the only one who ever cared anything for me, and I want him to have them."

The deceased also said to Mrs. Mize, another witness, that he wanted Ellie to have his personal property, and that he had fixed it with Jim McFarlane so Ellie could get what he had. The old gentleman shortly before his death also said to John Mize that he had left his personal property with Jim McFarlane for Ellie.

A few days before the death of Mr. Harmon Mr. McFarlane went around to his room to visit him. And Mr. McFarlane testified regarding this visit as follows:

"I went around to see John Harmon, and Ellie was there. And John Harmon seemed to be very much pleased that Ellie had come to see him, and said, 'I want him to get enough to pay his railroad fare here and railroad fare back.' And he said, 'I want you (speaking to McFarlane) to give him those notes.' I did not do it that afternoon, so the next morning Ellie came over to the bank and asked about the notes, and I showed him what they were and all about them."

There is other testimony in the case tending to show that, after the deceased had instructed McFarlane to deliver the notes to Ellie Harmon, he, the deceased, believed the notes had been delivered, and that he had surrendered the ownership of them to his son.

Mr. Harmon died in a few days after the conversation with Mr. McFarlane, and the above evidence is practically all there is in the case.

The question for our determination then is whether the facts and circumstances shown are sufficient to constitute a delivery of the notes, a surrender of all control or dominion over them by the donor, so as to perfect the gift.

There is no difference of opinion as to the law on the subject. The troublesome inquiry is whether a delivery was shown by the proof. There is no doubt but that the donor intended to give the notes to his son, and that he believed he had done so; however, the intent of the donor alone is not sufficient, unless there is a completion of the gift by delivery. If the donor did not surrender all control over the notes when he directed McFarlane to turn them over to his son, and the donor could have afterwards recovered the notes from McFarlane, then the gift was not consummated. But, if the possession and control by the donor was completely surrendered by delivery, and McFarlane held the notes as agent or trustee of the donee, then the gift was executed and completed.

We have reached the conclusion the gift was consummated when Mr. McFarlane, in pursuance of the request of the deceased, took the notes from the vault and showed them to Ellie Harmon and told him all about them, and then replaced them in the vault to remain as collateral security for the debt owed to the bank.

Let us take all the facts and circumstances together and determine therefrom, by the layman's logic, what happened and what was intended with reference to the delivery of the notes, and whether such acts and conduct was equivalent to a delivery.

When Mr. McFarlane called on the deceased at his room a few days before his death, the deceased expressly directed McFarlane to give the notes to his son Ellie; and McFarlane said that he did not give the notes to Ellie that afternoon but the next morning Ellie came over to the bank and asked about the notes, and that he showed the notes to him and explained all about them, and then retained them in the bank, as he had a right to do, to secure the payment of the debt due by the deceased.

Ellie was in the room that afternoon when the old gentleman instructed McFarlane to turn the notes over to Ellie; and McFarlane in effect said, "I did not turn the notes over that evening, but the next morning Ellie

called for them, and I took them out, showed them to him, and told him all about the notes, and then replaced them in the vault." We may reasonably conclude that Ellie went to the bank the next morning to get the notes or at least to accept them, as directed by his father, and that he received and left them there with McFarlane until some future time when he could pay the debt due by his father and take the collateral notes away. From then on McFarlane held the notes as agent of the donee.

The deceased told Mr. McFarlane the reasons why he wanted to leave the notes to his son. His directions in that regard could not have been plainer or more positive. The old gentleman had told other friends that he wanted his son Ellie to have the notes, and that he had arranged with Mr. McFarlane for his son to have the notes; and he fully believed, according to this record, that the notes had been delivered to his son, for he made no further claim to them nor tried to use them to secure a subsequent loan, but resorted to other property he had. Undoubtedly he thought his gift to his son had been completed, and entertained this satisfaction at the time he closed his eyes in eternal sleep.

We think what took place between McFarlane and Ellie Harmon at the bank the next morning after the conversation with the deceased was an act equivalent to delivery, and therefore constituted the delivery necessary to consummate the gift. Under the circumstances we think such delivery was made as was reasonably susceptible; the banker having a lien on the notes may not have actually placed the physical possession of them in the hands of the donee because he intended to hold them as security for the debt, yet there was delivery of the notes, as evidenced by the conversation regarding them and the taking of them from the vaults and showing and discussing the notes with Ellie Harmon, who was there to receive the property which he knew had been given to him by his father the day before; this was a delivery in the eyes of the law, and completed the execution of the gift. *Carra-*

*dine* v. *Collins,* 7 Smedes & 'M. 428-432; 28 C. J., p. 632, section 22; *Meyer* v. *Meyer,* 106 Miss. 638, 64 So. 420; 12 R. C. L., p. 936, section 12; *Dinslage* v. *Stratman,* 105 Neb. 274, 180 N. W. 81, 14 A. L. R. 702; *Innes* v. *Potter,* 130 Minn. 320, 153 N. W. 604, 3 A. L. R. 896; *Marshall* v. *Stratton,* 96 Miss. 465, 51 So. 132; *Liebe* v. *Battmann,* 33 Or. 241, 54 Pac. 179, 72 Am. St. Rep. 705 and note; *Miller* v. *Jeffress,* 4 Grat. (Va.) 472.

Therefore the decree of the lower court is reversed, and judgment entered here for appellant.

*Reversed, and judgment for appellant.*

SMITH, C. J. (dissenting).

Judge SYKES and myself are of the opinion that the contemplated gift here in question was not consummated by the delivery of the subject thereof. The only additions to the statement of facts contained in the opinion in chief and comment thereon which we deem necessary are:

(1) McFarlane was not the custodian of the notes. They were deposited with the bank of which McFarlane was the president as collateral security for a debt due by the deceased to the bank. It does not appear what McFarlane's authority as president of the bank was, and, in the absence of a charter provision or by-law to the contrary, the cashier and not the president is the executive officer of the bank.

(2) McFarlane did not approve of the deceased's intention to give the notes to his son Ellie, and each time the matter was mentioned to him by the deceased, except the last, he attempted to dissuade the deceased from so doing. This fact should be taken into consideration in determining whether or not 'McFarlane intended to deliver the notes when he showed them to Ellie.

(3) The conversation of the deceased with John Mize in which he stated that he had left his personal property with McFarlane for Ellie occurred some days before the conversation between the deceased and McFarlane set out in the opinion in chief.

(4)  We have been unable to find in the record any testimony ''tending to show that, after the deceased had instructed McFarlane to deliver the notes to Ellie Harmon, he, the deceased, believed the notes had been delivered, and that he had surrendered the ownership of them to his son.''