McClellan v. McCauley.

(Division A. Oct. 13, 1930.)

[130 So. 145, No. 28735.]

J. V. Gipson, of Meridian, for appellant.

Baskin, Wilbourn & Miller, of Meridian, for appellee.

460

**McGowen, J.**, delivered the opinion of the court.

In the chancery court of Lauderdale county, Mrs. Mc-Cauley, as executrix of the last will and testament of A. N. Griffin, deceased, exhibited her bill against Malcolm McClellan, trustee, J. V. Gipson, substituted trustee, and Mrs. Lizzett G. Brush. The allegations in the bill were to the effect that during his lifetime the deceased had loaned thirty thousand dollars to Joe Meyer et al., evidenced by their promissory note, and secured by a deed of trust, properly recorded; that said note and deed of trust were, on their face, payable to Mrs. Ray G. Mc-Cauley and Mrs. Lizzett G. Baldwin; but that in truth and in fact, from the date of the execution of the note and deed of trust, the same remained in his possession until his death, when they passed into the possession of Mrs. McCauley, as executrix of the estate; and that neither she nor her sister ever had any interest in said note and deed of trust, and that there had been no delivery of same to them.

It is further alleged that her testator, in his lifetime, loaned to Dumont twenty thousand dollars evidenced by a note secured by a trust deed. On the face of both papers it appeared that the lender was Mrs. W. P. Baldwin, afterwards Mrs. Lizzett Brush, and alleged that there had been no gift to Mrs. Baldwin, that the latter had no interest in the money loaned, or in the note, and that same were in their possession as executrix of the estate of her deceased father, A. N. Griffin; and that after his death, in her inventory, the appellee, as executrix, listed the described notes as part of the estate, and that thereafter payments were made to her by the makers of the instruments. On April 22, 1929, twenty thousand dollars was paid by the makers of the notes to appellee as executrix.

The bill charged that Mrs. Lizzett G. Baldwin, now Mrs. Brush, on April 17, 1929, executed an assignment of the notes and deed of trust securing same to Malcolm McClellan, trustee, and had the same recorded in the rec-

ords of Lauderdale county; and alleged that McClellan, trustee, after the assignment was filed for record, had J. V. Gipson appointed as substituted trustee, although R. E. Wilbourn had been named as trustee, and had not changed his place of residence, or in any way indicated a refusal to act as trustee, or neglected to do so.

The bill alleged that the appointment of the substituted trustee, as aforesaid, by McClellan, trustee, was null and void, and that it embarrassed and delayed the appellee in the collection of the assets of the estate, especially as to these two debts. It was further alleged that McClellan, trustee, had probated a claim for interest collected by the testator in his lifetime, against the latter's estate; and that this claim was not due and owing from the estate, and should be canceled.

The bill alleged that McClellan, trustee, had instituted a replevin suit for recovery of possession of the notes payable to Mrs. L. G. Baldwin, and that the institution of the replevin suit cast a cloud upon the title of the appellee as executrix, and embarrassed, hindered, and delayed her in the administration of the estate, and that the said McClellan, trustee, had no right, title, or interest whatever in such notes.

The bill prayed for a decree against Mrs. Brush, Gipson, and McClellan, trustee, declaring them to have no interest in either of the above-described debts, prayed for the cancellation of the appointment of the substituted trustee, prayed for an injunction against their setting up any claim of ownership or right to collect such notes and deeds of trust, and enjoined them from instituting any suit based thereon, or from prosecuting any claim therefor against the estate of A. N. Griffin; and the bill prayed for general relief.

A copy of the will of A. N. Griffin, the two notes, the deeds of trust securing same, the assignment by Mrs. Brush to McClellan, trustee, and the appointment by McClellan, trustee, of Gipson, as substituted trustee, were all made exhibits to the bill.

The answer denied that the note payable to Mrs. Baldwin constitutes any part of the estate of A. N. Griffin, deceased, and asserted that the note for thirty thousand dollars, payable to Mrs. McCauley and Mrs. Baldwin, did not constitute a part of his estate, but that Mrs Brush was entitled to a half interest in that note. It asserted that the assignment by Mrs. Brush to McClellan, trustee, was not void, and alleged that the taking of the notes, as described in the original bill, was for the purpose of transferring and delivering the equitable right, title, and estate in and to the moneys therein mentioned and thereby secured to Mrs. Baldwin, in the one instance, and to Mrs. McCauley in the other; and that A. N. Griffin in his lifetime held the notes as a trustee or agent for Mrs. Baldwin. They denied that either of the notes belonged to the estate of Griffin, and alleged that the payees named in the notes were the daughters of A. N. Griffin, and that because of his love and affection for them he caused the notes to be executed in their favor,' and that by his act he made a gift inter vivos to them, and that they thereby became the owners of the debts represented by the notes secured by the deeds of trust, as appeared on the face of the notes. Or if mistaken in that, then the respondent alleged that there had been an advancement of the amounts represented by the notes to the payees, as appeared on the face of the notes.

The case was tried on its merits, and a decree was rendered by the chancery court, vesting the title to the notes described in the bill in the executrix, as such, and canceling the claim of McClellan, trustee, and Mrs. Lizzett Brush to any interest in the notes or the proceeds thereof.

On the trial of the cause the following facts developed, which we deem it necessary to state: There is practically no contradiction in the record on any material point involved in this case. In the will of A. N. Griffin, deceased, the testator specifically described the thirty thousand dollar note signed by Meyers et al., dated February 15,

1927, and payable on its face to Mrs. Ray G. Baldwin, stating that it was a part of his estate, that his daughters had no interest in said moneys, and disposed of it as a part of his estate. The will also described the notes and deed of trust for twenty thousand dollars dated February 13, 1926, which note and trust deed showed on their face that Mrs. W. B. Baldwin was the payee and beneficiary therein; and also stated in the will that this note was a part of his estate, and that Mrs. Baldwin had no interest therein, and disposed of that by the terms of his will. Mrs. McCauley, the executrix, and Mrs. Brush are daughters of the testator, A. N. Griffin. At the time of the execution of the notes Mrs. Baldwin was a widow, and subsequent thereto she married and became Mrs. Brush.

Subsequently to the making of the first loan, and before the making of the second loan, the two daughters wrote separate letters, inclosed in the same envelope, and mailed, in which they severally admitted, in effect, that they had no interest in or claim to the money which was being loaned by their father, and that they knew the loans were being executed in their names, at his direction, for the purpose of evading taxes. No question can be raised as to this, since the letters stand undenied, and the signature of Mrs. Baldwin is identified and uncontradicted in this record.

It appears from the evidence given by the lawyer, the banker, and the real estate agent, who negotiated these two loans, that Mr. Griffin drew the money from his own account in the bank, and caused the checks to be held until the notes and deeds of trust were approved by his attorneys; and instructed the real estate agent who negotiated the loans to deliver the notes to him, and to have the deeds of trust recorded after they had been approved by his attorney. It is equally clear that he had the notes made payable to his daughters as above stated; and that he secured the letters mentioned because he was advised by his attorneys that it was dangerous for him to

lend in the names of his daughters. It is equally clear that he asserted title to, and exercised full, complete, and uninterrupted dominion over, the two notes, that he kept them in his private box, and never did or said anything with reference to them which indicated a desire to make any kind of delivery of the notes to his daughters. It is in evidence that he said on occasions that he desired to lend his money which he had in the bank to individuals on good security, because he could get more interest and avoid taxes.

One of the trust deeds was recorded, as directed, by Mr. Hart, the real estate agent, and delivered to Griffin; the other trust deed was left with the clerk, but the latter failed to follow directions and deliver it to Griffin; and after the death of the latter, and the probation of his will, it was found in the clerk's office, and delivered by him to the attorney for Mrs. Brush and McClellan.

The income tax returns filed by Mr. Griffin in his lifetime, and by Mrs. McCauley, executrix of his estate, after his death, do not affirmatively show that the interest collected on account of these two loans was listed in the returns. It nowhere appears in this record that Griffin, by word or deed, evinced any intention of surrendering dominion over, or possession of, the notes; but all the evidence shows that, at all times when the notes came in question, he exercised full dominion over, and control of, the same. The respondent, appellant here, offered no evidence tending to show any gift, but in the court below relied upon the claim that the manner in which the notes were executed, payable to the daughters, as above stated, constituted a complete gift inter vivos; or, if not a gift, it constituted an advancement.

It was shown by the appellant that Mrs. McCauley, executrix, had collected the principal of the twenty thousand dollar note executed by Dumont.

There is no evidence to show for whom McClellan was acting as trustee, but the written assignment to him of the one note, and of the half interest in the other, does

not purport to show that the notes were delivered with the assignments; and if they do so show, the facts are that the notes never left the possession of Griffin during his lifetime, that they were found in his box at the bank, and since his death have been in the possession of the executrix of the estate.

First, was there a gift inter vivos? The facts in the case answer in the negative. There was never a delivery, actual, constructive, or symbolical, of these notes to the payees named therein. The testator exercised complete dominion over them from their inception to the date of his death, when he disposed of them, or the proceeds thereof, by the terms of his will.

The essential elements of a gift inter vivos are that there must be a donor competent to make it, with freedom of will on his part, and intention to make it; a donee capable of taking the gift, which must be complete, and nothing left undone. The property given must be delivered by the donor, and accepted by the donee; the gift must go into immediate and absolute effect, must be gratuitous, and must be irrevocable. See 28 C. J., page 626, section 15.

On its facts, the case of Meyer v. Meyer, 106 Miss. 638, 64 So. 420, was a stronger case for holding a gift inter vivos as existing; but this court applied the rule here announced, and declared it to be no gift, holding that, where it was the custom of the members of a partnership firm at the end of each year to make an estimate of the profits of the business and to direct the bookkeeper to credit their sons with an equal part of each partner's share of the profits, but neither partner could withdraw the profits from the business without the consent of the other, this did not constitute a valid gift inter vivos, as such a gift must be made complete by actual delivery, and in such case there was no actual delivery of the profits, and each partner was entitled to change his mind, and revoke the order to the bookkeeper at any time. And the court there approved the text of 20 Cyc., sections

1193, 1195, and held, in effect, that the gift must be consummated, and that there must be a parting by the donor with all present and future legal power and dominion over the property. The rule announced there, quoted from Cyc. absolutely forecloses any argument that there was a gift inter vivos in the case at bar.

Second, it is insisted that, if there was no gift inter vivos, then Griffin, by having the names of his daughters inserted as payees in the notes, thereby made his advancement to her. There are no facts upon which to predicate even an argument for an advancement in this case. In the case of Greene v. Greene, 145 Miss. 87, 110 So. 218, 222, 49 A. L. R. 565, this court approved the definition of an advancement of funds in 1 R. C. L., p. 660, section 10, which we here reproduce: "The definition of advancement embraces the idea that the donor has irrevocably parted with his title in the subject-matter, and that complete title has passed to and become vested in the donee. And it is necessary to the existence of an advancement that the passing of the complete title and the vesting of the beneficial interest shall take place during the lifetime of the donor, as the purpose of an advancement is to allow the heir or distributee the present use and enjoyment of that which under other circumstances he would not secure until the donor's death. Hence, where no estate that can be alienated is given to a donee, no advancement can be said to have been made."

No title to the notes here in question vested in Mrs. Brush, and therefore, when she, by a separate written assignment, without delivery of the choses in action, undertook to convey each of them to McClellan, trustee, by that written instrument, under those circumstances, he acquired no more than was vested in Mrs. Brush, which, in plain language, is nothing.

Third, it is insisted that, Griffin having announced his intention to defeat the payment of taxes by having these notes executed to his daughters as payees, the executrix, therefore, does not come into court with clean hands, and

for that reason will be denied any relief in equity; and cites many cases announcing this well-recognized principle of equity, which is followed in law courts as well: That the courts will not assist a party who has consummated a fraud, in seeking relief therefrom. In equity, especially, it has been quoted many times by the courts of this country: "He who doth fraud may not borrow the hands of the chancellor to draw equity from a source his own hand hath polluted." And this principle has been discussed and applied in many cases in our own courts.

We shall assume, for the sake of a decision in this case, that, if a delivery of these notes had been had, and Mrs. Brush had been invested with the title, in that event the declaration of Griffin that he intended to defeat taxes, taken in connection with the letter of Mrs. Brush, would cause the parties here to be in pari delicto; a fraud consummated, from which neither of the parties could secure relief in a court of equity.

This rule is not for the benefit of the parties to a fraudulent transaction, but rests solely on the idea that society must be protected.

In the case at bar we shall assume that Griffin had a wrong motive in desiring so to invest his money as to defeat the recovery of its just dues by the state. Did he consummate the fraud, and confer anything upon Mrs. Brush? It is alleged, and appears to be the fact, that in this case the executrix of the estate of Griffin is in possession of the property, has accounted to the court for it, and that the same is now in the course of administration in the chancery court, and that the appellants, by their action, are delaying the administration of the estate, in seeking to recover possession of property which they never had, and trying to impair the security by changing the name of the trustee in a trust deed, of which he did not come into possession in a legal manner. The undisputed proof in this case was that the clerk of the chancery court was instructed to deliver the trust deeds, when recorded, to Griffin; that he delivered one,

and, after the death of the latter, the attorney for the appellants secured possession of the trust deed from the chancery clerk, and having so secured possession thereof, seeks to base some action thereon against the executrix in this case.

Griffin had the intention, we will say, to perpetrate a fraud upon the state and taxing authorities; but, in so far as Mrs. Brush is concerned, he did not consummate this intention; what he did in this connection, as shown by the record, gave her no right or interest whatever in the notes here in controversy. The unlawful intent of the grantor alone is not sufficient; there must be coupled with it the unlawful act which the statute of frauds condemns, as was well said by Judge COOPER in the case of O'Conner v. Ward, 60 Miss. 1025. In that case O'Conner procured the widow and heirs to execute a deed to him in order to defeat creditors, as well as for other purposes, in securing which deed he made false representations. When the widow and heirs sought to have the deed canceled, he claimed that they were in pari delicto, and did not come into court with clean hands. It was held by the court that the facts showed the parties to the conveyance to be in delicto, but not in pari delicto, and that they were entitled to relief; holding, in effect, that there was a bad motive, but not an illegal act.

So, in the present case we will say that Griffin had a bad motive in having the names of his daughters written into the face of the notes as payees, when in truth and in fact he was the real payee. He was in delicto; but Mrs. Brush, not having acquired anything, and not being, in fact, the payee of the notes, cannot be allowed, because of his wrongful act, to interfere with the court of chancery in the ordinary administration of an estate. There might be a very different case, had Griffin placed these notes in the possession of his daughter, Mrs. Brush; but since that was not done, it is unnecessary for us now to invade that realm.

In 27 C. J., page 658, section 428, we have the following: "The rule that courts will not aid a fraudulent grantor or those in privity with him to recover back property transferred in fraud of creditors applies only in cases where title to the property passed by the transfer. It has no application in a case where the debtor never in any sense parted with his ownership and right to the property claimed to have been conveyed as in the case of leases and bailments. So if the transaction purports to be a transfer of title, it must be by a sale actually consummated." See, also, Block v. Darling, 140 U. S. 234, 11 S. Ct. 832, 35 L. Ed. 476, and also the case of Luebke v. Salzwedel, 157 Wis. 601, 147 N. W. 831, wherein it is held that the inequitable conduct of a plaintiff in other and different transactions is not a bar to relief in the transaction involved in an action, if he is otherwise entitled to such relief. Thus, even if the plaintiff attempted or intended to defraud his wife (who was about to sue for a divorce), by a conveyance of his land which he neither delivered nor recorded, he is not debarred from equitable relief against the grantee named in such undelivered deed who fraudulently or without his consent obtained possession thereof and had it recorded.

In the case of Beekman v. Marsters, 195 Mass. 205, 80 N. E. 817, 820, 11 L. R. A. (N. S.) 201, 122 Am. St. Rep. 232, 11 Ann. Cas. 332, we find this terse statement, which sums up the situation in this case: "The ordinary rule is that it is only with regard to the plaintiff's rights against the defendant that the plaintiff must come into court with clean hands."

There can be no distinction between the case of an unrecorded undelivered deed retained by or under the dominion of the grantor and notes executed at the instance of a grantor in favor of his daughters, but not delivered, and dominion over the same not surrendered, where he paid the consideration for the notes, and the daughters had no other interest.

The maxim, "He who comes into equity must come with clean hands," has no such application as the appellant seeks to give it in this case, under the facts set out in the record. It has reference solely to willful misconduct in regard to the matter in litigation, "though an obligation be indirectly connected with an illegal transaction it will not thereby be barred from enforcement if the plaintiff does not require the aid of the illegal transaction to make out his case." See Yale Gas Stove Co. v. Wilcox, 64 Conn. 101, 29 A. 303, 25 L. R. A. 90, 42 Am. St. Rep. 159; Lyman v. Lyman, 90 Conn. 399, 97 A. 312, L. R. A. 1916E, 643; Chicago v. Union Stock Yards, etc., 164 Ill. 224, 45 N. E. 430, 35 L. R. A. 281.

In the instant case the fraudulent intention of Griffin in no way augmented, diminished, or affected the rights of the appellant; she got no advantage thereby, nor is she directly connected with it, as we have heretofore seen; nor was she in any wise injured thereby.

In our opinion, none of the authorities cited by counsel for appellant are in conflict with the views herein announced.

Fourth. It is assigned that the court erred in permitting the various witnesses to testify to the declarations made by the testator that these notes were his, and not the property of his daughters, and that he had procured from them letters admitting that they had no interest in them.

Some of these declarations may have been incompetent, but unquestionably those made in connection with the making of the notes, and the letters of the daughters admitting that they had no interest in the money lent, were competent; and, as there was no evidence whatever of a gift, no harm could possibly have come to the appellant in this case if some admission was not a part of the res gestae.

"The declaration and admissions of a donor either before or after the alleged gift, unless equally consistent with an intent not to give, are admissible, as bearing on

his intention, for the purpose of establishing the gift, as corroborative of other testimony. But the whole of what the donor said or did at the time must be taken together to ascertain his intention. The length of time between the declaration and the gift affects the weight, but not the competency of the evidence, unless it is so great as to render the declaration incapable of shedding any light on the question in issue. Prior or contemporaneous declarations of the alleged donor are also admissible to show that a certain transaction was not intended as a gift; but when the gift is once established his subsequent declarations are inadmissible to invalidate it,'' etc. See 28 C. J., p. 675, section 80.

We are of the opinion that there was never any delivery of these choses in action to Mrs. Brush, because the alleged donor retained possession and exercised full, complete, and unhindered dominion over them; and in all respects his acts were inconsistent with any intention to make a gift inter vivos to Mrs. Brush. Neither was there an advancement, for the same reason.

We are further of the opinion that the parties to this litigation are not in pari delicto, and that equity will afford relief to this plaintiff, because her testator never consummated a fraud in so far as his daughter, Mrs. Brush, is concerned, and, therefore, when Mrs. Brush seeks to interfere with the orderly administration of the estate, and makes claim to the property and hindering the orderly administration of the estate by the probate or chancery court, through its executrix, then the court of equity will intervene; and the doors of equity are not closed because the appellee's testator had, and announced, an intention to defraud the state of its taxes, which intention he did not consummate in so far as Mrs. Brush was interested; and therefore the appellee in this cause does not come into the court of equity with unclean hands.

We find no reversible error in the cause.

Affirmed.