ALLISON *v.* ALLISON.

(In Banc. Jan. 26, 1948.)

[33 So. (2d) 619. No. 36649.]

Cowles Horton, of Grenada, for appellant.

**Stone & Stone**, of Coffeeville, for appellee.

**L. A Smith, Sr., J.,** delivered the opinion of the court.

Appellee and her husband, A. A. Allison, had lived together many years on a plantation in Grenada County, which he had bought and for which he had paid, but which he subsequently conveyed to his wife, as one of the sons put it, "for protection." The deed recited that the consideration was "love and affection." That was on April 3, 1920, and life continued as theretofore on the plantation. According to the testimony of Mrs. Allison, "He always runs the place, just like I run the house business." Two other small tracts were bought and put in her name, adjoining the old home place. There was evidence that in the family it was all considered the joint property of the father and mother, in spite of the record title in the mother alone.

On September 2, 1946, Mr. and Mrs. Allison and Mr. and Mrs. W. W. Odom executed a joint agreement, carrying $500 as consideration and earnest money, that the

Allisons would convey this real estate to the Odoms, provided that the balance of the purchase price was paid or tendered before January 1, 1947. This option also embraced all livestock and farm tools of every kind or nature. The personal property belonged solely to Mr. Allison. The deed to the Odoms was signed and delivered on September 11, 1946, as a "walkout" proposition,—land, stock and farm equipments. A check for $6,300 was delivered, payable to Mr. and Mrs. Allison, which the maker, Mr. Odom, testified "was a cash payment on the same land that the deed of trust and note was given for a balance of the purchase price." This check was also dated September 11, 1946, and on the same date the Odoms signed and delivered a note to the Allisons jointly in the amount of $5,500. The trust deed from the Odoms was to the same lands and was to secure the payment of this note. The trust deed also included the stock and crops.

This case is a companion to the one decided by us January 12, 1948, styled Allison v. Allison et al., 203 Miss. 15, 33 So. (2d) 289.

The trust deed was put on record, the check was endorsed and cashed, and the trust deed and note were later found, with other business papers of Mr. Allison, in a cigar box in a chifforobe in the bedroom of the home of Mr. and Mrs. Allison,—one daughter testifying that whenever he would turn over any paper to his wife, "she would put it away for him."

Mr. Allison could not write his name, and his wife was accustomed to doing so for him, as she could read and write. She denied, however, that she endorsed the check, stating that she knew nothing about it, or the note or the trust deed, as to how or to whom payable, until after the death of Mr. Allison during the latter part of September 1946. There was no proof to show who else could have endorsed, or did endorse, the check. Upon the death of the father, the two sons of the Allisons' were thereupon appointed administrators of their deceased father's

estate, and upon advice of their attorney, these papers were turned over to the fiduciaries, the active one of whom was L. L. Allison, appellee here. Mrs. Allison waived her widow's right to administer and joined in the application for letters of administration to be issued her sons.

The attorney employed in the drafting of the real estate papers and the note, and securing the grant of letters, was a careful, capable, honorable member of the Grenada Bar, respected and esteemed, and now deceased.

As stated above, the note was payable to Mr. and Mrs. Allison jointly, and some time after her husband's death, and after appointment of the administrators of his estate, Mrs. Allison went with her son, L. L. Allison, to an official of a local bank in Grenada and borrowed money on *her part* of the note, which she has repaid.

Later, she filed the other suit mentioned, supra, and this suit. In the suit at bar, she averred that making the note payable jointly to her and Mr. Allison was a mistake, suggesting in the original bill that the writer "was very probably led into the mistake in making A. A. Allison a joint payee of the said note by the fact the real necessity for Mr. A. A. Allison's signing the deed was on account of the fact that the land conveyed included the homestead of Mrs. Allison and her husband." This, obviously, is conjecture. In other words, by her suit and evidence, Mrs. Allison sought to establish that the note was so drawn due to a mistake of the attorney, there being no allegation of any mutual mistake of the parties. Since there was no proof of any mistake by anyone, the chancellor correctly so found and declared in his opinion dictated into the record.

The prayer of the bill was "that a judgment be given in favor of the petitioner declaring the petitioner to be the sole beneficiary of the note in controversy and that the note be turned over to her, or the proceeds be turned over to her, as the true owner," and for general relief. Administrator L. L. Allison answered with categorical

denials, and averments setting forth the circumstances of the case from his standpoint as administrator of his father's estate and claiming there was no mistake, and that one-half of the note belonged to the estate of the deceased husband and father. It is to be particularly noted that the bill was in nowise drawn on any theory that Mrs. Allison's right to the entire note was predicated upon her husband's gift of it to her. It is also to be remembered that she even denied that she knew it was payable to herself and Mr. Allison until after his death.

However, the following testimony was given in the record by one Thomas, a witness on behalf of appellee: "He (referring to Mr. Allison) told me going to town, tears was running out of his eyes; he said that deed was in her name. He told me that the deed was in Miss Sallie's name, and he was crying about the kids, said that was the only thing he hated to die because the little kids—the doctor said they had what their mother had, T. B., and that is why he was leaving this money for Miss Sallie to take the kids and take care of them—his grandchildren."

At the conclusion of all the testimony, appellant moved the court for a finding of law and fact, under the statute so entitling him. Thereupon, the court found that the note was not drawn and executed by fraud, accident or mistake. This finding should have, it seems, ended the matter, as the original bill was predictated wholly and exclusively on mistake. But, instead, the chancellor granted the appellee the relief she sought,—not on the ground of mistake, but on the ground that Mr. Allison had given his half of the note to Mrs. Allison, as a gift, apparently causa mortis. The chancellor said in his findings: "When you come right down to this proposition there is so little testimony in here about that. The testimony is that whenever he took a paper of any kind, he took it home and delivered it to his wife, and it is presumed that he took this note home—that her husband took this

note home and delivered it to his wife. Now we have got to look to something outside of the family's testimony to throw some light on this proposition of whether this note belonged to the widow or not, and there is just one spark of testimony by a disinterested person.''

After summarizing the quotation of Mr. Thomas' testimony, ante, the court concluded: ''This Court is of the opinion that he had delivered this note in question to his wife as her property for that purpose.'' This conclusion was so absolutely repugnant to the wife's claim of absolute ownership, that the prayer for general relief would not authorize relief on that basis, even if the evidence supported it. The evidence, supra, manifests its own weakness and inefficiency, and the chancellor himself appraised it as meagre. A party-complainant can have relief only on the case made by his bill of complaint. Section 565, Griffith's Mississippi Chancery Practice, p. 621; United States Casualty Company of New York City v. Malone, 126 Miss. 288, 88 So. 709. Since relief was sought by complainant below, appellee here, in her original bill on the sole ground of mistake and her own exclusive ownership, the court erred in granting her relief on the totally extraneous ground of the gift to her of what she, according to her own contention, already owned, by her husband whose right she resolutely denied.

The evidence on which the able chancellor erroneously based his conclusion was wholly insufficient to measure up to the standard required to support a claim of gift. ''To establish a gift, it must not only appear that donor intended to make gift but that he consummated gift by an actual, constructive, or symbolical delivery of property to donee and the mere declaration that a gift was made not accompanied by acts showing delivery of possession or an absolute parting of all dominion and interest is not sufficient to render gift valid.'' Comfort v. Smith, 198 Miss. 152, 21 So. (2d) 584. Her daughter said Mrs. Allison put away papers handed her by her

husband "for him"; Mrs. Allison said she did not know how the note was payable until after her husband's death; the banker said she borrowed money personally on her part of the note; and it was found with Mr. Allison's business papers after his death. So, the evidence, we think, is not enough to bear the burden of a gift, and hence the chancellor was in error in so holding. See also Harmon v. McFarlane, 135 Miss. 284, 99 So. 566; McClellan v. McCauley, 158 Miss. 456, 130 So. 145; Jones v. Jones, 162 Miss. 501, 139 So. 873; Yates' Estate v. Alabama-Mississippi Conference Ass'n of Seventh-Day Adventists, Inc., 179 Miss. 642, 176 So. 534; Gidden et al. v. Gidden, 176 Miss. 98, 167 So. 785.

No cross-appeal was taken here by appellee, putting at issue whether or not the chancellor was correct in holding the note as drawn, was not due to mistake, as alleged in her original bill. The final decree adjudged that "Mrs. Sallie Allison is the sole owner of and entitled to the full possession and ownership of said note,which possession and ownership is here accorded her."

In view of what we have said, supra, we are of the opinion that the learned chancellor was wrong in granting relief not sought by and inconsistent with the case in the original bill; and also that his holding that the evidence established a gift was manifestly wrong, and against the overwhelming weight of the evidence. Therefore, the decree of the trial court is reversed, and decree entered here, dismissing the original bill.

Reversed and decree for appellants.